## MICHAEL COLLINS v. CORNELIUS CRONIN.

### ERROR TO THE COURT OF COMMON PLEAS OF SULLIVAN COUNTY.

Argued March 17, 1887—Decided October 3, 1887.

1. In an action against two or more, in case in the nature of a conspiracy, if the tort be actionable whether committed by one or more, recovery may be had against but one ; but if the tort be actionable only when committed under an unlawful conspiracy of two or more, recovery may not be had unless the unlawful conspiracy be established.
2. Laverty v. Vanarsdale, 65 Pa. 507, explained and approved.
3. Judgments confessed by a father to a son cannot be held to be fraudulent as to creditors of the father, without collusion and combination between the two to hinder, delay and defraud such creditors.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.; CLARK, J., absent.

No. 265 January Term 1887, Sup. Ct.; court below, No. 19 May Term 1885, C. P.

The action was begun on March 4, 1885, by a summons in case issued by Michael Collins against Cornelius Cronin and John H. Cronin, and the declaration, which was in three counts, charged an unlawful and malicious conspiracy between

the defendants to cheat and defraud the plaintiff and others, creditors of said Cornelius Cronin, executed by the confession of judgments without consideration and fraudulent, by said Cornelius Cronin to said John H. Cronin, and that upon said judgments executions were issued, whereby the entire estate, real and personal of said Cornelius Cronin was sold and removed from the reach of the plaintiff and other creditors defrauded. The defendants pleaded, not guilty.

On the trial, December 19, 1885, it appeared that Cornelius Cronin was the father of John H. Cronin. The father in 1870 was the owner of much property, real and personal, was in excellent credit, and engaged in the business of store-keeping, tanning and farming. In August, 1870, he gave his son a piece of real estate, worth several thousands of dollars, and in 1872 made him an equal partner in the business of the store, the partnership continuing till 1879, when it was dissolved. The material facts out of which the controversy arose are sufficiently shown in the charge to the jury which in part was as follows :

This is an action on the case brought by Michael Collins against Cornelius Cronin and John H. Cronin in which the plaintiff seeks to recover damages for a conspiracy between John H. and Cornelius Cronin to hinder, delay and defraud the creditors of Cornelius Cronin.

The plaintiff in this case is a creditor of Cornelius Cronin, and he was such at the time of the acts complained of and at the time of the alleged conspiracy. The nature of this action makes it proper, and, as we think, our duty to instruct you first with reference to the rights of creditors ; to instruct you as to what constitutes a conveyance or conveyances fraudulent as to creditors. If you understand the rights of creditors as against their debtor and their relations to each other you will better comprehend and understand the instructions which we shall give bearing directly upon the issues involved in this case. . . . . . . In this case, as we have stated, a conspiracy is charged between these two defendants. In other words, it is alleged that they combined and agreed to hinder and delay the creditors of Cornelius Cronin in the collection of their debts ; that that was the intent with which they acted ; that the purpose which animated them in the transactions to which we shall shortly allude, was to defraud these creditors.

Charge of Court below.

[It lies upon the plaintiff to show the conspiracy charged, to make it out to your satisfaction by the weight of the evidence in the case; and when the plaintiff shall have satisfied you by his evidence and the weight of it that these parties did conspire and agree to cheat and defraud the creditors of Cornelius Cronin, and that in the execution of that conspiracy this plaintiff, who was a creditor of Cornelius Cronin, was injured, then the plaintiff will be entitled to receive a verdict at your hands for such injury as you shall find he has sustained.][3]

We may say to you here that as we understand the case the only confessions of judgment by Cornelius Cronin which are called in question and claimed to be the result of a conspiracy, and to be fraudulent, are those which were given to John H. Cronin; and the only conveyances made by Cornelius Cronin at any time which are assailed by the evidence in this case, or against which a charge of fraud is made, are the conveyances that were made to John. . . . . .

[You come then to the inquiry whether the acts and conduct of Cornelius and John H. Cronin in their business, together with any declarations which may have been made by them, satisfy you of the existence of a conspiracy between them to defraud the creditors of Cornelius Cronin.][2]  One of the matters in the evidence upon which we understand the plaintiff to rely to some extent to support this allegation of a fraudulent conspiracy, is the conveyance by old Mr. Cronin to his son John on the 23d of August, 1870, of the hotel property and tenement house, or rather of the property which is spoken of as descended from the uncle James.  This is the only conveyance from Cornelius Cronin, as we recollect the evidence, that is called in question.  Then the matters about which the main contention in the case hangs are those coupled with the dissolution of the partnership which once existed, or which were at or near that time.  We mean the giving by Cornelius Cronin to John H. Cronin of certain notes, upon which John H. Cronin subsequently entered judgments against his father and made sale of real estate.  Now in regard to these matters which are called in question—in their order—does the evidence satisfy you as to the character of this transaction in 1870, the conveyance of this house and lot?  It is

claimed on the part of the plaintiff that Cornelius Cronin had the title to the property and that he conveyed to the son without consideration. Thus far that claim is true, and that conveyance may have been fraudulent as to then existing creditors of Cornelius Cronin, provided that he did not have and retain in his hands ample means with which to satisfy all his indebtedness. Evidence has been given before you on the question of Cornelius Cronin's means at the time of this conveyance in 1870, and they claim to have shown by their evidence that Cornelius Cronin at that time was in possession of large means, that he had ample property with which to satisfy every obligation that was against him, and they claim therefore that he had the right to make this conveyance to his son even as a gift. That claim is true, as we have already intimated in the statement of the general principle, provided the theory is true that he did have the means to discharge his indebtedness at that time. Was there in August, 1870, any confederation or combination to cheat and defraud the creditors of Cornelius Cronin? John H. Cronin testifies concerning this deed, that his uncle had expressed an intention to convey this property to him, that at one time a deed was made out, but it was not delivered, and he died without having made and delivered the deed to him. The property then descended to the brother, Cornelius Cronin, subject to the rights and interests of James' widow in it. It seems that Cornelius Cronin paid some twelve hundred dollars and bought out that interest and then conveyed the property to John H. Cronin, as he testified, one of the purposes being in order to carry out the intentions of the uncle. There is not so much contention with reference to this conveyance as to the confessions of judgments. The bulk of the evidence in the cause clusters about them, but we say, in passing, that when that conveyance was made to John H. in August, 1870, under the circumstances exhibited in the evidence, he acquired an honest title to that property, provided his father retained ample means with which to discharge all his existing indebtedness; and that he owned it in such case just as perfectly against the whole world as· he would if he had purchased it with his means. His title in that case depends upon the fact to which your attention has been directed. Had the father,

when he made this conveyance, ample means to discharge his indebtedness? If he had, John H. Cronin became the owner of this property and entitled to hold it as the perfect owner.

We now come to these judgments. Early in 1879 the records show that judgments were entered in this court in favor of John H. Cronin against Cornelius Cronin—several judgments. These judgments were entered upon notes which had been given by the father to the son some time previous, most of them a short time previous to the entry of judgments upon them. Upon these judgments, or some of them, John H. Cronin caused to be issued executions, by virtue of which certain real estate of his father was seized and sold at sheriff's sale, and he became the purchaser of the most of it, according to our recollection of the evidence. If those judgments were honest judgments, given for an honest purpose, simply to secure that which the father owed the son, then any sale made by the son upon and by virtue of these judgments passed the title, and it is of no consequence whether that property brought at sheriff's sale a high or low price. That is of no consequence in the case, provided those were honest judgments. So that in our view it becomes of the first importance in the right determination of this case for the jury to inquire as to the consideration of these judgments and as to the purposes for which they were given. Were they given for property which John owned? We speak of the hotel property and tenement house and certain lands which John had a title to and sold to his father. Was it a fair, ordinary transaction for which a certain note was given? If it was, that note was good and valid. And so as to all of these notes on which judgments were entered and upon which these sales were made, did they represent an indebtedness of the father to the son?

That is the first inquiry, and it is important to know that in this case—did they represent an indebtedness from the father to the son? If they did, were they given to secure that indebtedness with a view and intention of protecting the son in his just claims; or were they given with a purpose and intent—given by the father and received by the son—with the intent to defeat, delay and obstruct the creditors of Cornelius Cronin? As before said, it seems to us that much must

Charge of Court below.

depend upon the consideration of the notes upon which these judgments were entered, and we refer to this because there is quite a large volume of evidence in the cause. It is not our design to refer to that evidence in detail; it is sufficient we think for us to make a brief reference to the claims of the respective parties concerning the consideration of these notes. Upon the one hand, it is claimed in behalf of the plaintiff that these notes were given without consideration; that Cornelius Cronin was not indebted to John in these amounts, and that the purpose for which they were given was to defraud the creditors of Cornelius Cronin. On the other hand, it is claimed that these obligations refer to an honest existing indebtedness from the father to the son and were given for the purpose of protecting and securing the son in his just claims. Now, if the claim of the plaintiff is the true claim, he has a cause of action here; he has a standing and a right to recover. If the claim of the defendants is the true one, the plaintiff has no standing in this action.

We have mentioned incidentally one of the judgment notes—the note spoken of as the $7,000 note; that the greater share of the consideration of that note, as testified to by the defendant, John H. Cronin, comes from the conveyance and sale by him to his father of this hotel property and tenement house and some other property. Is the transaction truly stated? Was this property held by John, had he the title to it, and did he sell it to his father in the regular course of business and take from him his obligations for the price agreed upon? Was it a fair, honest transaction between them? If it was, the judgment is valid.

[Another judgment about which there is considerable evidence and considerable contention is the largest judgment, the $9,000 judgment. Considerable care ought to be exercised by you in passing upon the claims of the contending parties concerning that judgment. The claim of the defendants with reference to it is substantially this: that in 1872, some time about June, John H. Cronin entered into partnership with his father in merchandising; that this partnership continued down until about the time these notes were given, when it was dissolved. His claim is, that at that time it was ascertained that his father was indebted to the firm of Cornelius

Cronin & Son in something over $9,000, for money and goods which he had drawn from the firm and with which he was charged; that John H. Cronin, the other partner, was indebted to the firm and had drawn from it somewhere in the neighborhood of $600, and that upon examination of their affairs they found them to be in this condition: that there was upwards of $9,000 owing by the firm, and that the entire assets of the firm, including this $600 due from John and the $9,000 or more due from Cornelius Cronin to it, amounted to the neighborhood of $13,000, so that there would have remained, · if the indebtedness was paid, somewhere in the neighborhood of $4,000 assets. For this indebtedness both John H. and Cornelius Cronin were liable. The claim of the defendants here is that an arrangement was made by which they dissolved and John H. took upon himself the burden of discharging this firm indebtedness, and that this note of $9,000, or thereabouts, represents the firm indebtedness. In other words, John assumed to pay the firm debts and his father gave him his obligation for that sum. Now, if that is the true history of the case, if the transaction is, so far as respects that note, such as is detailed by John, it would seem to be a valid obligation and have a sufficient consideration to support it, and the amount of the obligation would not exceed the consideration. It would be a lawful and proper transaction. Was that the true situation? To corroborate himself in this claim as to the amount of indebtedness of his father to the firm, they bring here the firm books and offer them in evidence, and you remember that they occupied the time of the court and jury well towards a day, more than half a day, in the reading of the items of this account; and then upon the suggestion of the court it was, for the purpose of saving time and in the belief that the justice of the cause would be as well reached in that way as any, agreed or rather admitted that the books of the firm show upon their face an indebtedness from Cornelius Cronin to the firm of this amount and that the footings were correct, etc. That agreement was made to reach the obvious result of the reading of the accounts, which would have occupied us perhaps a half a day more. The same result would have been reached. These books are relied upon to some extent as corroborative of the claim of the defendants as

to the consideration of that note, as well as of the testimony of John H. Cronin. There are some other notes that have been mentioned, and with respect to the consideration of them some evidence has been given. We leave these questions to your recollection under the general principles which we have stated. We deem it necessary only to call your attention to those mentioned, or the large judgments. The same principles apply to the one that apply to the others.] [4]

The counsel for the contending parties have presented some points in writing which it becomes our duty to answer, and we now proceed to that duty. . . . . . On behalf of the defendant we are asked to instruct you on the following:

1. That fraud is never to be presumed, but must always be proven by evidence that is clear and satisfactory to the jury. And this action is founded upon the alleged fraud of the defendants. In order that the plaintiff can recover in this action they must find that the evidence establishes by satisfactory proof the fact that the defendants were guilty of fraud, and this must be true of both defendants, as both John H. and Cornelius Cronin must have intended a fraudulent act in order to entitle the plaintiff to recover.

Answer: We think this a correct proposition and we affirm it. [1]

After further instructions, upon the subject of damages, the jury found in favor of the defendants, and a motion for a new trial being refused, the plaintiff took this writ assigning for error:

1. The answer to the defendant's point. [1]
2. The part of the charge embraced in [ ] [2]
3. The part of the charge embraced in [ ] [3]
4. The part of the charge embraced in [ ] [4]

*Mr. Charles E. Terry* and *Mr. John G. Scouten* (with whom were *Mr. W. E. Little* and *Mr. C. A. Little*), for the plaintiff in error:

The first three assignments raise the same question: Can there be a recovery against one only, in an action on the case in the nature of a conspiracy brought against two or more? The solution depends on the answer to the query: Is the gist of such action the conspiracy, or is it the damage sustained by the plaintiff?

1. The action for conspiracy is obsolete, and in its place has arisen the action on the case, in the nature of a conspiracy: Selwyn N. P. 1062*; Penrod v. Mitchell, 8 S. & R. 522. This latter action may be brought against one only, and where it is brought against two or more, although a conspiracy be alleged in the declaration and a verdict be found for all the defendants except one, yet the plaintiff will be entitled to judgment. On the contrary, the action for a conspiracy must be brought against two persons at least, because the, gist of the action is the conspiracy: Selwyn N. P. 1063*; Comyn's Dig., title, Action on the Case for Conspiracy, C. 1; Jones v. Baker, 7 Cow. 445; Laverty v. Vanarsdale, 65 Pa. 507; Glass v. Stewart, 10 S. & R. 222; Leidig v. Bucher, 74 Pa. 65; Bishop v. Long, 2 W. N. 671; Hutchins v. Hutchins, 7 Hill 104; Kimball v. Harman, 34 Md. 407; Parker v. Huntington, 2 Gray 124.

2. As to the fourth assignment. The jury were cautioned to approach the consideration of the note mentioned with care, and to look at the claims of the respective parties concerning it. The court then at some length called attention to every feature of the theory of the defendants, showing how they were corroborated, etc., but neglected to refer in any manner to the plaintiff's contention. This omission, though through inadvertence, had a tendency to mislead the jury: Byles v. Hazlett, 11 W. N. 212; Garrett v. Gonler, 42 Pa. 143; Penn. Canal Co. v. Harris, 12 W. N. 432.

*Mr. Thomas J. Ingham* (with him *Mr. E. M. Dunham* and *Mr. Ellery P. Ingham*), for the defendants in error:

1. It is not claimed in our first point, nor did the court rule in affirming it, that "there can be no recovery against one only in an action on the case in the nature of a conspiracy, brought against two or more." What the court did rule, applicable to this case, is contained in that point, which is sustained by abundant authority. The fraud is never to be presumed, but must always be proven: Morton v. Weaver, 99 Pa. 52; Bear's Est., 60 Pa. 436; Mead v. Conroe, 113 Pa. 220; Loucheim v. Henszey, 77 Pa. 307. In this case the plaintiff must establish the fraud of both defendants: Biever v. Herr, 1 Pears. 510; Gaunce v. Backhouse, 37 Pa. 350; Newall v.

Jenkins, 26 Pa. 159; Reephling's Admrs. v. Byers, 94 Pa. 316; Morris Run Coal Co. v. Barcley, 68 Pa. 173; Towar v. Barrington, Bright. 253; Hinchman v. Richey, Bright. 143; Scott v. Heilager, 14 Pa. 238.

2. The confession of a fraudulent judgment to defraud creditors necessarily involves two persons. If the wrong was such that it could be committed by one alone and one alone committed it, there may be a recovery against that one. If the wrong is such that two or more must combine to do it, there cannot be a recovery against one only: Page v. Parker, 43 N. H. 363; Moore v. Tracy, 7 Wend. 227. Collusion must be established in order to question the validity of the transactions charged in this case as fraudulent: Bank's App., 85 Pa. 532; Thompson's App., 57 Pa. 175; Dougherty's Est., 9 W. & S. 189; Miner's Bank v. Roseberry, 81 Pa. 309; Scott v. Heilager, 14 Pa. 238; Loucheim v. Gregory, 77 Pa. 305.

OPINION, MR. JUSTICE PAXSON:

The plaintiff in error has misapprehended the vital point in his case. The learned judge below did not lay down the broad principle that "there can be no recovery against one only in an action on the case in the nature of a conspiracy brought against two or more." What he did say was this: "That fraud is never to be presumed, but must always be proven by evidence that is clear and satisfactory to the jury. And this action is founded upon the alleged fraud of the defendants. In order that the plaintiff can recover in this action they must find that the evidence establishes by satisfactory proof the fact that the defendants were guilty of fraud, and this must be true of both defendants, as both John H. and Cornelius Cronin must have intended a fraudulent act in order to entitle the plaintiff to recover."

The plaintiff has assigned this instruction for error and has cited Laverty v. Vanarsdale, 65 Pa. 507, and some other cases in support of his position. In our opinion he is not sustained by any of them. Laverty v. Vanarsdale is perhaps the strongest, and that does not touch the case. That was an action on the case, in the nature of a conspiracy, brought by Laverty against Vanarsdale and ten others, for injuring him in his business as a school teacher. The allegation was that

the defendants, for the purpose of preventing plaintiff from being engaged as a school teacher for another year wilfully and maliciously prepared, signed and induced others to sign a petition representing that he was unfit for a teacher, etc. It was held by this court, in reversing the court below, that "where the action is brought against two or more, as concerned in the wrong done, it is necessary, in order to recover against all of them, to prove a combination or joint act of all. For this purpose it may be important to establish the allegation of a conspiracy. But if it turn out on the trial that only one was concerned, the plaintiff may still recover, the same as if such one had been sued alone. The conspiracy or combination is nothing so far as sustaining the action goes, the foundation of it being the actual damage done to the party," and Hutchins v. Hutchins, 7 Hill 104; Jones v. Baker, 7 Cow. 445, and Parker v. Huntingdon, 2 Gray 124 were cited by Mr. Justice READ in support of this text. This is perfectly good law. Under the facts of that case the combination or conspiracy was nothing. One of the defendants could have traduced the character of the plaintiff as a teacher, as well as a number of them, and if he had done so he was clearly liable in damages for his own act even although the other defendants had no part in it. It was an act capable of being performed by one defendant alone. But in the case in hand the conspiracy was everything. Without it the plaintiff had no cause of action, for the plain reason that the acts charged in the declaration were of such a nature that they could not be committed by one defendant alone. It was alleged that Cornelius Cronin had confessed fraudulent judgments to his son John for the purpose of hindering, delaying and cheating the creditors of the former; that executions had been issued upon these fraudulent judgments, and his property sold and bought in by the son at much less than its value. This, if true, would have been a fraud upon the plaintiff and other creditors. The jury found that it was not true, under proper instructions from the court. For how could fraudulent judgments spring into existence between a father and son without collusion, combination and conspiracy? And if the judgments were bona fide, then the son was merely using the legal remedies to collect an honest debt due from his father. He had as much right to do

this as had any other creditor, and no action lies against him therefor.

The case is too plain for argument.

Judgment affirmed.