Amelia A. Young *et al.*, v. T. A. Gormley *et al.*, Appellants.

**Action for Tort:** PLEADINGS: ALLEGATION OF CONSPIRACY: WHEN ESSENTIAL. Where a tort may have been committed by one or more, independent of any conspiracy, the allegation of conspiracy is immaterial, and recovery· of damages may be had against those participating in the ·tort, but to charge all the combination must be shown.

**Record of Proceedings of Council:** PRESUMED CORRECT. The record of the proceedings of a city council is presumed to correctly state its action, unless the contrary is shown.

**Malice:** WANT OF EVIDENCE: SUBMISSION OF ISSUE TO JURY. Evidence considered and held that it failed to establish malice on the part of the members of the council in opening a street, and that this issue ought not to have been submitted to the jury.

**Evidence:**· OPINION OF WITNESS. The opinion of a witness, that a strip. of land is not in. fact a street, who claims to have examined it and so concluded, is incompetent to show malice or the nonexistence of the claimed street.

*Appeal from Lynn District Court.*—Hon. W. G. Thompson, Judge.

Monday, February 9, 1903.

The land included in Young's addition to Mt. Vernon was acquired by S. T. Young in 1854, and by him platted in

1860.  The tract in controversy is a strip sixty-six feet
wide, lying between lot 3 and lots 4 and 12, extending
from Main street in a northeasterly direction to the quar-
ter-section line.    Between it and Munroe street lies a por-
tion of lot 5, which appears to have been acquired by the
town some years ago.    Young died in 1896, and the plain-
tiffs are his widow and heirs.    A dispute arose between
them and town authorities as to whether this land was a
street, and the council, in response to a petition of citi-
zens, adopted resolutions to the effect that Penn street, by
which it seems to have been known, be opened, and "that
the marshal and street commissioner be ordered to remove
the sidewalk and fence now standing across Penn street."
The mayor thereupon directed the street commissioner to
execute this order, and the marshal to protect him while
doing so, and they removed the alleged obstructions.
Plaintiffs replaced them, and again they were removed by
the officers.    Thereupon this action was begun, the petition
alleging that the mayor, Gormley, and two of the council-
men, Willix and Leigh, conspired and confederated to-
gether unlawfully to injure plaintiff's real estate, and in
pursuance thereof pretended to act as council of the incor-
porated town of Mt. Vernon, and as such to adopt a
resolution to the effect that Penn street be opened; that
they directed the other defendants, Geiger, the marshal,
and Alexander, the street commissioner, to remove the
fences and sidewalks from the disputed strip of land, which
the latter did; that said parties were acting together as
individuals in said matter, and with malice; that said strip
had never been platted or dedicated as a street, nor ac-
cepted by the authorities as such, but had been occupied
by plaintiffs, and those under whom they claim, adversely
for more than forty years.  The defendants responded in
their answer by asserting they were officers of the town,
and had acted in the capacities mentioned; that the strip
of land was one of the streets of said town, and legally

established as such; that the resolutions mentioned were regularly adopted by the town council; and that defendants without improper motives, and acting solely in their official capacities as officers of said town, proceeded to open said street. Trial to jury resulted in a verdict against all defendants save Geiger for actual and exemplary damages, upon which judgment was entered, and they appeal.—*Reversed.*

*Jamison & Smyth* for appellants.

*Charles W. Kepler* for appellees.

LADD, J.—A strip of land had been in dispute for several years. It was claimed by the incorporated town of Mt. Vernon as a street—Penn street— extending from Main street, between lot 3 and lots 4 and 12 of Young's addition, to the quarter-section line, but separated from Munroe street by a part of lot 5. It was claimed by plaintiffs as an inheritance from S. T. Young, who had platted the addition, and also because of adverse possession. The pleadings put in issue: (1) The existence of this street; (2) whether defendants, in what they did, were acting officially; (3) If not, whether they corruptly conspired together to injure the property of plaintiffs; (4) whether, if they did not so conspire, any of them in fact injured said property; and, (5) if so, were such as did actuated by malice.

Appellants insist that, as conspiracy was alleged, no recovery could be had unless this were proven. Were the wrong alleged actionable only because of an unlawful combination of several persons, the position would probably be sound. *Jenner v. Carson,* 111 Ind. 522 (13 N. E. Rep. 44); *Collins v. Cronin,* 117 Pa. 35 (11 Atl. Rep. 869). But where the tort may have been committed by one or more, independent of any conspiracy, that allegation is of no consequence, so far as the cause of action is concerned. Damage is then

1. ALLEGATION of conspiracy: when essential.

the gist of the action, and not conspiracy.    In order to
recover against all defendants, it is necessary to prove a
combination or joint act of all.    For this purpose proof of
conspiracy may become essential.    But if it turn out that
but one was concerned, recovery may be had against that
one the same as though he had been sued alone.    If more
than one jointly do the wrong, like recovery may be had,
though conspiracy had not been established.    In other
words, the allegation of conspiracy in such cases is mere
matter of inducement and evidence, the injury and dam-
ages being the gravamen of the action.    *Van Horn v. Van
Horn*, 56 N. J. Law, 318 (28 Atl. Rep. 669); *Laverty v.
Vanarsdale*, 65 Pa. 507; *Austin r. Barrows*, 41 Conn.
287; *Jones v. Baker*, 7 Cow. 445; *Parker v. Huntington*, 2
Gray, 124; 4 Enc. Pl. & Prac. 739.

II.    The evidence without any conflict shows that the
council, in regular session, adopted a resolution to open
Penn street, in 1897, and another, November 6, 1899, ''that

2.  RECORD of    the marshal and street commissioner be ord-
proceedings
of council;    ered to remove the sidewalk and fences now
presumed
correct.    standing across Penn street.''    This appears
from the record of the proceedings of the council, which,
in the absence of any showing to the contrary, is presumed
to be correct.    *Mann v. City of ·LeMars*, 109 Iowa, 251.
The last resolution was passed late at night, after the
regular business had been disposed of, and two members
had left.    They were apprised, however, that the matter
would come up, and a quorum remained. .    True, one coun-
cilman—Stevenson—was asked whether he voted ''to
direct the street commissioner and the marshal to tear
down the fences and sidewalks on the property in controv-
ersy claimed to belong to Mr. Young,'' and answered,
''No, sir.''    But, his attention being called to the resolu-
tion, he said that he had voted for it.    A similar question
was asked another, and he simply answered that he did
not vote for that purpose.

III. No complaint is made against the defendants for acts done as members of the council. The charge is that they employed these as masks to cover their efforts

**3. MALICE: want of evidence: submission of issue to jury.** as individuals to injure plaintiff's property. Of this, however, there is not the slightest evidence. Indeed, the record affirmatively shows that plaintiff's representative, Geo. W. Young, was at all times treated courteously by all members of the council when in session, and it fails to indicate ill will toward any of them on the part of any of the defendants. The land beyond Munroe street had been unoccupied up to 1894 or 1895, but improved rapidly thereafter, which developed a demand for this street. Petitions for its opening were presented to the council. The disputed land had not been taxed since 1860. In 1895 the board of equalization declared it not subject to taxation. In 1897 Young appeared before the board with abstract and plat, and insisted that it be placed on the assessment roll. Thereupon a committee was appointed to investigate. It reported, and was directed to employ counsel. Subsequently advice from a reputable attorney was obtained to the effect that the strip was a street, and as such belonged to the town. Thereafter another committee was appointed to confer with Young and September 16, 1897, a motion was carried "to proceed to open Penn street." Nothing further seems to have been done until April, 1898, when this portion of Penn street was stricken from the assessor's list.

After this Young was again heard, when the necessity of litigation was mutually recognized, and he expressed the wish that the matter be settled. Some time in 1899 employment of an attorney was directed, and October 28th of the same year counsel who had furnished the opinion wrote to the mayor "that the proper thing to do is for the city council of Mt. Vernon to go on, and treat the street as a public street, and throw the same open to the

public. Then we will put the other parties in a position to have them commence some kind of an action or proceeding against us, in which we can fully and finally determine the question as to our rights and their rights. * * * You will therefore act accordingly." It was in pursuance of this advice that defendants acted in the matters complained of. Their entire good faith in what they did is not put in issue by any of the evidence adduced. True, they knew the right to the property was in dispute, and some of them may have believed the plaintiffs entitled to it. But they were not learned in the law. It had been agreed that an adjustment by litigation was desirable. They had the right to yield their views to the opinion of counsel whose standing in the profession was such as to leave no doubt as to their competency. ,Nothing in the record conflicts with their statement to Herrick that, if "the property belonged to Mr. Young, they wanted him to have it, and, if it belonged to the city, they wanted it to have it." There being no evidence of malice, that issue ought not to have been submitted to the jury.

IV. Several witnesses were asked if they had investigated whether the strip of land was a street, and, over defendant's objections, were allowed to testify that they 4. Ev dence: had, and had concluded that it was not; and, opinion of witness. further, that they had informed some of the defendants. This was error. If offered as bearing on the motive actuating defendants, it was not admissible. Knowledge of facts may often be shown for that purpose, but never the opinions or conclusions of witnesses deduced therefrom. If offered as tending to prove the nonexistence of a street, it ,was improperly received, as that was not the subject of expert testimony, and the questions propounded had the additional vice of calling for an opinion on the ultimate issue to be passed upon by the jury.

V. Most of the other errors assigned relate to the claim for exemplary damages, and will not be likely to

arise on another trial.    Enough has been said to indicate
the issues raised by the record:  (1) Whether the land in
controversy belonged to plaintiffs; and, if so, (2) the ex-
tent of the actual damages occasioned by the trespass, and
who of defendants are liable therefor.    Of course, t e
resolutions of the council can afford no protection against
the claim for actual damages unless the tract is found to
be a street.—REVERSED.