J. W. OVERSTREET, Appellant, v. NEW NONPAREIL COMPANY et al., Appellees.

ACTIONS: Misjoinder—Waiver. Answering causes of actions 1, 8 which are improperly joined works a waiver of the misjoinder. (Sec. 3548, Code, 1897.)

PARTIES: Defendants—Libel. The composer and the publisher of 2 a libel may be joined in the same action, and especially so when there is a charge of conspiracy to compose and publish.

PLEADING: Issue, Proof, and Variance—Joint Tort—Judgment. 3 Allegations of a joint tort will support a judgment for damages against one and dismissal as to another. So held as to libel. (See Secs. 3599, 3639, Code, 1897.)
    Note: See *Yocum v. Husted,* 167 N. W. 663.

**LIBEL AND SLANDER:** Libels Per Se—Indirectness of Language. It is libelous *per se* to publish of an employee that he was disloyal, untrustworthy, a hypocrite, and a traitor, even though such charge is clothed in the garb of *indirectness* of language as to the one assailed, when, from the entire publication, the jury might reasonably infer that such employee was the person intended.

**LIBEL AND SLANDER:** Evidence—Understanding of Publication —Witnesses—Competency. A witness who has read a libelous publication may testify that he understood the article to refer to a certain person, *provided he first qualifies by showing a knowledge of facts or circumstances which gave the words of the publication a special meaning to him.*

**LIBEL AND SLANDER:** Evidence—Acts of Agent—Authority. Acts of an agent or employee of a corporation defendant, in instigating or preparing the libel, are properly excluded, in the absence of any proof of authority in the agent or employee to act for the corporation in such a matter.

**LIBEL AND SLANDER:** Evidence—Failure to Connect with Defendant. Evidence that a libel was tendered for publication in neswpapers other than the one in which it was actually published, *with no showing that the tender was by the defendant*, is properly excluded.

**ACTIONS:** Misjoinder—Waiver.
1, 8

*Appeal from Pottawattamie District Court.*—J. B. ROCKA-FELLOW, Judge.

MAY 13, 1918.

REHEARING DENIED SEPTEMBER 30, 1918.

ACTION for damages consequent upon the publication of an alleged libel resulted in a directed verdict and judgment thereon. The plaintiff appeals.—*Reversed.*

*Thomas Q. Harrison,* for appellant.

*Tinley, Mitchell, Pryor & Ross,* and *Saunders & Stuart,* for appellees.

LADD, J.—There was published in The Evening Non-

pareil, a daily newspaper of general circulation, published by the defendant New Nonpareil Company, January 6, 1915, the following:

"A NEW MAGAZINE ISSUED TO THE BANKING FRATERNITY. (Below is a reproduction of the January title page.)

THE LIVE WIRE

| A busy paper | Published By | Published |
| for | THE CHARLES E. WALTERS | every little |
| Busy Readers | COMPANY. | while. |

VOL. 1        COUNCIL BLUFFS, IA., JAN., 1915.        No. 1

SUCH IS LIFE.

"Oftentimes many of us encounter disloyalty and treachery coming from a close personal friend. It always hurts our pride and our feelings, but we turn the page and forget it, because life is too short to spend in grieving. However, when a trusted employee who may also be a personal friend, or anyone employed in a confidential capacity, becomes a traitor, which often happens, through jealousy or possibly because it is in the blood, then that man becomes a dangerous element—a wolf in sheep's clothing, and must be dealt with accordingly for the protection of mankind. Such a man is often discharged but in some cases the more charitable employer will allow him to resign. Isn't it a fact when each of us look back over a period and recall the many similar cases of which we have personal knowledge, that in almost every case the man who went wrong was given really too much leeway. Whenever we hear of a case of that kind the following motto of our friend Elbert Hubbard is always suggested to the mind:

" 'If you work for a man, in Heaven's name work for him. If he pays wages that supply you your bread and butter, work for him; speak well of him, think well of him, stand by him, and stand by the institution he represents. I think if I worked for a man I would work for him. I would not work for him a part of his time, but all of his time; I would give an undivided service or none. If put to a pinch an ounce of loyalty is worth a pound of cleverness. If you must vilify, condemn and eternally disparage, why, resign your position and when you are outside, damn to your heart's content. But, I pray you, so long as you are a part of an institution, do not condemn it. Not that you will injure the institution—not that—but when you disparage that concern of which you are a part, you disparage yourself.' "

### RESIGNATION ACCEPTED.

"At a recent meeting of the directors of the Chas. E. Walters Company, the resignation of J. W. Overstreet, formerly Assistant Secretary, was read and accepted. This will serve to notify the banking fraternity that he is no longer connected with this company. Mr. H. H. Byers, who has been with the company for some time, has been selected to fill the vacancy and we take great pleasure in announcing that Mr. Byers will give his entire attention to the management of our Bank Officers and Clerks' department.

### FULLY EQUIPPED.

"Launched upon the broad sea of commerce our vessel is modernly rigged and equipped—our flags are at full mast all the time and we are connected up with the 'Live Wire,' and as our pilot has instructions to avoid the turbulent seas of discord our voyage must of necessity be a pleasant one, not only for ourselves, but for our friends who seek passage with us. We have nothing to offer but first class

passage, with unlimited capacity, and our rates are not controlled by any syndicate. We stop to take on and to let off passengers everywhere and the word is 'masters' of the situation."

This is followed by four or five short paragraphs, relating more or less to the business of The Charles E. Walters Company. This is alleged to have been composed by and published at the instance of the Charles E. Walters Company, and the petition alleged that plaintiff was, and had been for some time, a resident of Council Bluffs, and, "up to about the first day of January, 1915, was the assistant secretary of the defendant, The Charles E. Walters Company, in the city of Council Bluffs, Iowa, and since the first day of January, 1915, has been engaged in the buying and selling of banks as a member of the firm of Rhodes Overstreet Company, in Omaha, Nebr.;" that defendants and each of them, in publishing said article, intended to and did charge plaintiff with having committed an indictable misdemeanor, intended to and "did thereby deprive the plaintiff of the benefits of public confidence and social intercourse; and that they and each of them did, by said article so published, expose him to contempt and public ridicule, and intended to and did provoke him to wrath. Intended to and did injure and wrong him in his said vocation, calling, and business, as a private banker, engaged in the buying and selling of banks and bank stock, by charging plaintiff with being a traitor to his employer, a contemptible person, dishonest, and undeserving of confidence; and that the several statements in said article were scandalous, malicious, and defamatory; and that the same were so published of and concerning this plaintiff by the defendants and each of them, maliciously and with the express intent and purpose upon the part of defendants and each of them of injuring this plaintiff in his good name and standing in this community where he resides, and also in Omaha, Nebraska, Douglas

County, where he was and is engaged in the business of the buying and selling of banks and bank stock, as before stated; and with such intent and purpose."

Defendant Charles E. Walters Company denied the publication; but, if it was published, averred good faith, in that the publication was for justifiable ends; denied that it was false, scandalous, malicious, or defamatory; and averred that the statements therein were true. The defendant New Nonpareil Company admitted the publication of the newspaper, as alleged, and that it had a wide circulation in the state of Iowa, and "to some extent in and through several states bordering thereon;" denied publication of the article as the same appears in the pleadings, and that it was false, scandalous, malicious, or defamatory; and alleged that a somewhat similar article was published by it at about the time alleged, that it was received as advertising matter, in due course of business, and as such published by this defendant without malice, that plaintiff was not known to anyone in its employment, and it was not aware that said article had reference to plaintiff.

The second count was substantially the same, except that the publication is said to have been made in the morning of the following day. An amendment was filed, alleging that the article was false; that defendants so knew; that same was published maliciously; and that persons reading said article understood it to refer to plaintiff, and defendants so intended. Later on, plaintiff filed another amendment, asserting that plaintiff was caused physical pain, anguish, humiliation, chagrin, and disgrace, to his damage in the sum of $1,000.

The third amendment alleged that the Charles E. Walters Company, prior to January 6, 1915, maliciously published and sent through mails the article, in pamphlet form, to banks and bankers in Iowa and the central and western states. The fourth amendment withdrew the portion of the

third amendment not above referred to, and, in lieu thereof, alleged that defendants conspired to injure plaintiff, as aforesaid, by so publishing and distributing said pamphlet, with purpose as stated.

I. It is to be observed that conspiracy is charged only in publishing the article in pamphlet form and distributing it among bankers. No evidence was adduced tending to prove conspiracy or the publication of such pamphlet; and, at the close of the evidence, on motion of defendants, the issues with reference to publishing any pamphlet were withdrawn from the jury, and need be given no further consideration.

II. Some question is raised as to whether there was a misjoinder of causes of action. No motion was made to strike from the petition, or the petition as amended, any cause improperly joined, as exacted by Section 3547 of the Code; and therefore, all objections on that ground were waived. Section 3548, Code. *McDonald v. Second Nat. Bank,* 106 Iowa 517; *Hendron v. Kinner,* 110 Iowa 544.

1. ACTIONS: misjoinder: waiver.

And there is no ground for saying there is a defect of parties. The charge is that the New Nonpareil Company published a libelous article, and that The Charles E. Walters Company composed the same, and procured the New Nonpareil Company to publish it, or that the two conspired so to do, and did publish the same. The wrong alleged is the publication of a particular article; and the substance of the charge is that both defendants are responsible therefor, either because of the publication of the article in carrying out an alleged conspiracy between them, or for that each participated in the wrong done. The situation is not like that of joining defendants in an action for slander, where their utterances are distinct and separate; for there the torts are distinct, and the remedy could apply only in the separate appraisal of damages consequent upon each.

2. PARTIES: defendants: libel.

The authorities are uniform in holding that this may not be done. *Hinkle v. Davenport,* 38 Iowa 355; *Cogswell v. Murphy,* 46 Iowa 44; *Bort & Baldwin v. Yaw,* 46 Iowa 323.

Here, the petition merely alleged a joint tort; and, if a case was made out against the other, or if verdict be for one defendant and against the other, judgment may be entered against the one, and the petition

3. **PLEADING:** issue, proof, and variance: joint tort: judgment.

dismissed as to the other. *Boswell & Tobin v. Gates,* 56 Iowa 143; *Pearse v. Balm,* 152 Iowa 422; *Gagle v. Besser,* 162 Iowa 227, 229; *Lull v. Anamosa Nat. Bank,* 110 Iowa 537. See *Yocum v. Husted,* decided December 14, 1918. *Young v. Gormley,* 119 Iowa 546, 547, is quite in point:

"Appellants insist that, as conspiracy was alleged, no recovery could be had unless this were proven. Were the wrong alleged actionable only because of an unlawful combination of several persons, the position would probably be sound. *Jenner v. Carson,* 111 Ind. 522 (13 N. E. 44); *Collins v. Cronin,* 117 Pa. 35 (11 Atl. 869). But where the tort may have been committed by one or more, independent of any conspiracy, that allegation is of no consequence, so far as the cause of action is concerned. Damage is then the gist of the action, and not conspiracy. In order to recover against all defendants, it is necessary to prove a combination or joint act of all. For this purpose, proof of conspiracy may become essential. But if it turn out that but one was concerned, recovery may be had against that one, the same as though he had been sued alone. If more than one jointly do the wrong, like recovery may be had, though conspiracy had not been established. In other words, the allegation of conspiracy in such cases is mere matter of inducement and evidence, the injury and damages being the gravamen of the action."

There was no misjoinder of parties; and defendants, by failing to raise the question by motion before answer, waive the alleged misjoinder of causes of action.

III.   Was the article of a character "tending to pro-
voke him [plaintiff] to wrath or expose him to public hatred,
contempt or ridicule, or to deprive him of the benefits of
public confidence and social intercourse?"
Section 5086, Code.   If so, then it must be
denounced as libelous.

**4. LIBEL AND
SLANDER:
libels _per se_:
indirectness of
language.**

The article alludes to the employee con-
templated as a possible friend, or employed in a confiden-
tial capacity, and characterizes him as disloyal, treacherous,
a traitor, a hypocrite; and intimates that, though he might
have been discharged, he was, in charity, permitted to re-
sign.   From the use of the words "many of us," "each of
us," and "we," the fair inference is that the purported pub-
lisher, Charles E. Walters Company, had gone through the
experience described.   Indeed, it all but said so, in the
question, "Isn't it a fact, when each of us look back over
a period and recall the many similar cases of which we
have personal knowledge, that, in almost every case, the
man who went wrong was given really too much leeway?"
Then the reference to the excerpt from Hubbard.   Follow-
ing, with but four "ems" intervening, and under "Resigna-
tion Accepted," is the recital of the resignation of plaintiff
and its acceptance.   It connects perfectly with what pre-
cedes; for that suggested a confidential relation, and plain-
tiff is said to have been assistant secretary; it suggested
that the employee might be allowed to resign, his resigna-
tion is announced, and said to have been accepted; it sug-
gested that he was trusted, and he must have been, if made
assistant secretary.   Moreover, the separation by the "ems"
no more than indicated a subdivision of the same subject-
matter, under a different headline, and ordinarily would
be regarded as a subdivision of the same article.   A person
reading the entire matter said to have been taken from the
"Live Wire" might connect the discussion to and reason-
ably infer that it referred to J. W. Overstreet, who is said

to have resigned, and the acceptance of whose resignation by the directors is ostentatiously announced. We entertain no doubt that there was room for the jury to find that what was said in the article quoted was intended to be applied to plaintiff; and if so, there can be no doubt of its libelous character. Surely, to denounce an employee as disloyal, untrustworthy, a hypocrite and traitor in his employment, would constitute, if published, libel, within the definition of Section 5086 of the Code. In ascertaining the thought intended to be conveyed, the situation of the parties may well be considered. Shortly before, the plaintiff had withdrawn from The Charles E. Walters Company, and had connected himself with a company 'engaged in the same business in Omaha, Nebraska; and the jury might have found, in view of the characterization and the notification to bankers that he was no longer connected with The Charles E. Walters Company, that the latter resented his engagement in business so near by, and, under the guise of a general discussion, intended to characterize him as appears in such article. The characterization of a person by insinuation, allusion, imputation, or irony may be quite as certain and effective as though directly applied. *Hughes v. Samuels Bros.*, 179 Iowa 1077; *Codner v. Central .C. R. Agency*, 180 Iowa 188; *Turner v. Brien*, 184 Iowa 320, and cases therein cited. The thought conveyed, rather than the particular language employed, is the test; and, in the case at bar, if the jury should find that plaintiff was intended, there is no escape from the conclusion that the article constituted a libel *per se*.

IV. One Boyer testified to a residence of 27 years in Council Bluffs; that he was a printer, engaged as foreman of the mechanical department of the World Herald, a news-

paper published in Omaha, Nebraska, and
had taken the Nonpareil for 20 years, and
read the articles. This question was asked:
"I want to call your attention first to
the part of the article beginning with the
title 'Such is Life,' and refer to the sub-
heading 'Resignation Accepted,' and ask you, at the time
you say you read it, to whom that referred, if anybody, in
your judgment?"

5. LIBEL AND
SLANDER: evi-
dence: under-
standing of
publication:
witnesses:
competency.

An objection as incompetent, immaterial, and irrele-
vant, and one of the ultimate facts to be determined by the
jury, and calling for a conclusion, was sustained. There
was no error. The witness was not shown to be possessed
of any special knowledge of the parties, relationship, or
situation qualifying him to speak, save from an examina-
tion of the article. To warrant the reception of evidence of
this character, it must be "first shown that some circum-
stance was known to him [the witness] which reasonably
gave the words a special meaning." 3 Wigmore on Evi-
dence, Section 1971. Without such qualification, a person
would be in no better situation to pass on the question than
other readers, or any juror. In other words, he necessarily
obtains the defamatory information, if such it be, as others
of the community, rather than as readers with special fa-
cilities for understanding what is said. Even though the
language be conceded to be somewhat uncertain or ambigu-
ous as to who was intended, neither this witness nor oth-
ers called was shown to be aware of anything which would
better enable them than other readers to say whether plain-
tiff was intended. See *Knapp v. Fuller*, 55 Vt. 311 (45 Am.
Rep. 618). To justify the reception of what a witness un-
derstood from reading, he must first show knowledge of
explanatory facts or circumstances tending to qualify him
to speak on the subject. *Anderson v. Hart*, 68 Iowa 400,
401; *Quinn v. Prudential Life Ins. Co.*, 116 Iowa 522; *Tomp-*

kins v. Wisener, 1 Sneed (Tenn.) 458; Chiatovich v. Hanchett, 96 Fed. 681; Smart v. Blanchard, 42 N. H. 137; Russell v. Kelly, 44 Cal. 641; Hearne v. De Young, 119 Cal. 670 (52 Pac. 150). See State v. Mason, 26 Ore. 273 (26 L. R. A. 779). Otherwise, he merely expresses an opinion based on evidence on which the jury's finding must rest, and passes on the ultimate issue to be decided; and this is not permissible. The objection was rightly sustained.

V. One Beadle, who had been employed by The Charles E. Walters Company prior to March, 1915, testified that "the advertising man of the Nonpareil" was in the private office of R. W. Walters, secretary of the company, at least twice; and that, after the advertising man had gone, said Walters came to the main office.

6. LIBEL AND SLANDER: evidence: acts of agent: authority.

"Q. What, if any, remarks did he make at that time in reference to the publication of Exhibit 3 of the Live Wire in this case, and Mr. Overstreet in particular, in the Nonpareil?"

An objection as incompetent, immaterial, and irrelevant and not binding, was sustained. The witness was not permitted to testify how long the call of the advertising man was prior to the publication, nor the conversation as to what he came for. The witness then testified that R. W. Walters was responsible for getting "the stuff" in the article together; that Byers wrote some.

"In the article 'Such is Life' is copied from Fra. R. W. Walters did the work. R. W. Walters wrote the article beginning with the line 'Resignation Accepted,' and the article following. * * * I do not know the name of the advertising man of the Nonpareil,—he was a tall, slender fellow. Q. Did you hear any conversation at all between Ralph Walters and this advertising man while he was there, in regard to this article,—the publication of the same in the Nonpareil?"

An objection as immaterial, irrelevant, and incompetent, no sufficient foundation and hearsay, was sustained; and thereupon, all the evidence subsequent to the ruling on the first question above was stricken.

It will be observed that, previous to the first quoted question, R. W. Walters had been shown merely to have been secretary of the company. It might not be inferred that he had charge of its advertising department, or was authorized to speak for the company with reference thereto. On this ground, the ruling was rightly sustained.

Thereafter, the witness swore to Walters' connection with the preparation of the article, but nothing was added with reference to his authority to act for the defendant; and, on the ground of absence of authority, the objection to the ruling may be sustained. Of course, a ruling the other way would not have been erroneous; for the order of the introduction of evidence is so largely a matter of discretion that the trial court might have received the evidence and admitted evidence of authority later on. *Roemer v. Jacob Schmidt Brewing Co.*, 132 Minn. 399 (1916E, L. R. A. [N. S.] 771), relied on by appellant, is not inconsistent with this conclusion.

VI. The business manager in Council Bluffs of the World Herald, heretofore mentioned, swore to reading the article in the Nonpareil, and was asked whether the article had previously been offered to his department for publication; and, on objection as incompetent, irrelevant, and immaterial, answer was excluded. The ruling may be approved, on the ground that the inquiry does not purport to connect the suggested tender of the article with either of defendants.

**7. LIBEL AND SLANDER: evidence: failure to connect with defendant.**

VII. The evidence in connection with admissions proved publication by the New Nonpareil Company, and its motion to direct a verdict in its favor ought to have been

overruled. The grounds of this motion were

8. ACTIONS: misjoinder: waiver.
that there was a misjoinder of causes of action and also of parties, and that the article was not libelous *per se*. As pointed out, none of these grounds was good. As to whether the other defendant procured the publication of the article, the evidence is somewhat doubtful; but, upon its consideration, in view of the situation, we are inclined to remand the cause as to both defendants for another trial.—*Reversed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.