## Van Gilder et ux., Appellants, *v.* Bower et al.

Argued January 29, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Calvin Smith,* of *Smith & Paff,* with him *George Kuhl,* for appellants.

*S. H. Rupp,* of *Butz & Rupp,* for appellees.

OPINION BY MR. JUSTICE DREW, March 19, 1934:

This is an action of trespass for deceit. At the close of plaintiffs' case the learned trial judge entered a compulsory nonsuit, which the court in banc refused to take off. Plaintiffs appealed.

The evidence discloses the following facts: The plaintiffs, George Van Gilder and Mary Ann Van Gilder, his wife, were the owners of a farm in Monroe County. They employed the defendant Rahn, a real estate agent, to procure a purchaser. He obtained an offer from the defendants H. Frederick McCabe and Emily W. McCabe, husband and wife, and on October 1, 1928, a written agreement was executed, by which plaintiffs were to convey their farm to Mrs. McCabe and pay her $2,000 in cash, and the McCabes were to execute to plaintiffs a mortgage of $3,700, which was to be a first lien on the farm, and another mortgage of $2,500, which was to be a second lien on a certain residence property in Wilson Borough owned by Mrs. McCabe and a first lien on certain vacant lots of very small value owned by her. It was understood at the time by the Van Gilders that the first lien on the Wilson Borough property amounted to approximately $6,200.

On October 9, the settlement day, Van Gilder, Rahn and the McCabes met at the office of Albert F. Kahn, a lawyer in Easton, and the transaction was consummated. It is contended by plaintiffs that at that time Rahn and the McCabes, acting in conspiracy, fraudulently concealed the fact that there were two mortgage liens, instead of one, outstanding against the Wilson Borough property and that consequently the mortgage then executed by the McCabes to plaintiffs, covering that property, was a third and not a second lien. The

McCabes were never served with process, and the case was tried against the defendants Rahn and Bower alone. Bower was joined as a partner of Rahn, but there was a total failure of proof that he was such. It is admitted that the mortgage was a third lien, the encumbrances against the property being as follows: a first mortgage of approximately $4,800; a second mortgage in favor of Furman Hummel, which was originally for $2,700, but which had been reduced to an amount which was variously placed at $1,350 and $1,700 by the witnesses; and a judgment in favor of Victor Mitko, on which approximately $900 was due. Plaintiffs admit that the existence of the Mitko judgment was disclosed and that the amount necessary to discharge it was deducted from the cash payment of $2,000. They strenuously insist, however, that the evidence is sufficient to support a finding that the existence of the Hummel mortgage was fraudulently concealed by Rahn and the McCabes.

To determine the soundness of this contention it is of course necessary to examine the evidence as to what happened at the meeting in the office of Mr. Kahn. This evidence consists of the testimony of Rahn, called by plaintiffs as for cross-examination, and that of Van Gilder. Rahn testified that the whole matter, including the existence of the Hummel lien and the amount due thereon, was fully discussed in Van Gilder's presence, that Mrs. McCabe presented receipts showing the payments she had made on this encumbrance, and that all the liens, including this mortgage, were listed by Rahn on the sheet of yellow paper on which the calculations involved in the settlement were made. He also testified that he called Van Gilder's attention to the fact that the Hummel mortgage was outstanding against the property and pointed out that this was not according to the agreement, but stated that when Mrs. McCabe produced her receipts and it was found that the Hummel lien had been greatly reduced and that the first lien was but $4,800, instead of $6,200 as previously understood, Van

Gilder said that he was satisfied. He stated in addition that the Van Gilders employed independent counsel in the person of Mr. Kahn to examine the title to the Wilson Borough property, though this was denied by Mr. Kahn, who testified that he was employed solely to attend to the satisfaction of the Mitko judgment. Van Gilder, on the other hand, testified that at no time during the negotiations was the Hummel mortgage mentioned in his presence. He said that he was entirely unaware that there was such a mortgage until about ten months later, when he was so informed by Mr. Hummel. His whole testimony, if true, shows that he was most remarkably ignorant of what was going on before his very eyes in a matter with which he was vitally concerned. He saw Rahn, who was sitting at the same table with him, place figures on the yellow sheet (and it is conceded that the Hummel mortgage was marked thereon), but said he made no effort to read its contents. He admitted that Mrs. McCabe exhibited various papers, and that these were laid out on the table and examined by Rahn and Mr. McCabe, but claimed that he had no idea what they were.

Assuming that the testimony is sufficient to support a finding that the Hummel lien was not mentioned in Van Gilder's presence, we think it fails entirely to show a combination or agreement between the McCabes and Rahn, which it was necessary for plaintiffs to prove in order to establish a conspiracy: Ballantine v. Cummings, 220 Pa. 621. The failure to prove a conspiracy might not of itself be fatal to plaintiffs' claim, since the deceit averred in the statement of claim would be actionable whether committed by one or by several, and where this is true recovery may be had against a single defendant, even though there is an unproved allegation of conspiracy: Laverty v. Vanarsdale, 65 Pa. 507; see Collins v. Cronin, 117 Pa. 35; Fillman v. Ryon, 168 Pa. 484. However, it is well settled that in an action for deceit it is necessary to prove actual fraud on the

part of defendant: Warren Balderston Co. v. Integrity Trust Co., 314 Pa. 58, and cases there cited. Viewed in the light most favorable to plaintiffs, and with all matters unfavorable to them eliminated, except those admitted to be true, the evidence is, in our opinion, far short of being sufficient to create a reasonable inference of fraud on the part of Rahn. At most, plaintiffs have proved simply that Rahn did not mention the Hummel mortgage, though he knew of its existence. This may have been the result of an intentional concealment on his part, or it may have been due to carelessness or to an honest though mistaken belief that Van Gilder knew the fact and needed no further information. There is nothing whatever in the record from which a person desiring to reach a just conclusion solely from the evidence could reasonably infer that it was due to one of these causes rather than to another. This being true, plaintiffs failed to meet the burden upon them to establish fraud, and the trial judge acted properly in entering a nonsuit.

Judgment affirmed.