SAMUEL F. STEWART, Appellant, v. JAMES PIERCE, and SAMUEL F. STEWART, Appellant, v. LAFAYETTE YOUNG.

**Libel.** A writing which amounts to accusing plaintiff of having, for gain, availed himself of the confidence of a special friend and of his necessities and moods, in order, by deception, to induce that friend to sell property to plaintiff, is libelous.

*Appeal from Polk District Court.*—HON. S. F. BALLIET, Judge.

WEDNESDAY, DECEMBER 19, 1894.

The action against James Pierce is to recover damages for writing and publishing a certain letter alleged to be libelous, and the action against the defendant Young is for publishing the same in a newspaper. Demurrers were filed to each petition on the ground

that the matter set out as published is not libelous. The demurrers were sustained, and the plaintiff electing to stand on his petitions, judgments were entered against him, from which he appeals. The cases are submitted together under a stipulation that the result shall be the same in each.—*Reversed*.

*Power & Huston* and *Gatch, Connor & Weaver* for appellant.

*Cummins & Wright* and *Guernsey & Bailey* for appellees.

Given, J.—I. We have the single question whether the writing as set out in the petition is libelous. To determine this we must have in mind what constitutes libel and then inquire whether the writing is within the definition. Section 4097 of the Code is as follows: "A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy, tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse; or any malicious defamation made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives or friends." With this plain definition before us we need not refer to any of the many cases defining libel, but proceed to inquire whether this writing brings these cases within the terms of the statute. In construing this writing its words are to be understood in their plain and natural import according to the ideas they are calculated to convey to those to whom they are addressed, reference being had not only to the words used, but also to the circumstances under which they were written. 13 Am. & Eng. Enc. Law, 378; *Irlbeck v. Bierl*, 84

Iowa, 47, 50 N. W. Rep. 36. Plaintiff alleges as inducement in substance as follows: That he is, and has been for three years last past, a resident of Illinois, and that previous thereto he had resided for many years in Iowa, in the cities of Des Moines, Mt. Pleasant, and Chariton. That he had been deputy auditor of state and clerk in the office of auditor of state for several years under John L. Brown, auditor. That he was for a time advertising solicitor for the *Homestead,* an agricultural newspaper published in Des Moines by an Iowa corporation called the Homestead Company. That during all those years he had acquired and enjoyed a reputation for honesty, integrity, ability, and honorable dealing with business men generally among his neighbors and throughout the state. That prior to January 1, 1887, the stock in said corporation was owned one-half by the wife of John L. Brown and one-half by the defendant, who was acting as president and business manager. That about January 1, 1887, plaintiff bought of Mrs. Brown four thousand dollars par value of said stock, and about September 26, 1887, six thousand dollars par value more of said stock, thus making plaintiff and defendant equal owners. That about December 12, 1887, by written agreement among all three of the parties, plaintiff and defendant contracted to sell, and afterward sold, to Henry Wallace, editor of said paper, three thousand dollars par value of said stock. The petition then charges that on January 19, 1892, defendant Pierce "wrongfully, willfully, and maliciously wrote and published of and concerning the plaintiff the following false, scandalous, and defamatory matter, the same being in a letter written and sent by defendant to Mrs. R. A. Stewart, then the wife of this plaintiff." The writing as set out covers five closely printed pages of the abstract. It is too voluminous to be set out at length. A careful reading of it in the light of

the circumstances stated as inducement shows that the
following accusations are made in the writing against
the plaintiff:   It appears therefrom that the plaintiff
and John L. Brown were, and had been for a long time,
warm personal friends.   That the plaintiff, knowing
that Mr. Brown was financially embarrassed, said to
Mr. Pierce, in substance:   "Pierce, you know that
Brown is a man of moods.   Well, some of these times
he will get blue, and want to sell his stock.   I believe it
would be a good plan for me to move my family to Char-
iton as soon as possible, and when he is in one of these
moods, and ripe to sell, if I am out on the road, Mrs.
Stewart could telegraph me to that effect."   The writ-
ing says, "Well, Mr. Stewart did move his family to
Chariton, as he said he would do, and did buy Mr.
Brown's stock."   Following the alleged statement of
Stewart to Pierce, the writer says:   "I mentally stood
aghast at this revelation of Mr. Stewart's character.
For the first time I saw him a coldblooded, grasping
man, who was ready to sacrifice his friend of many
years' standing, who ought to have been endeared to
him by years of intimate association.   I saw in him a
heartless, selfish being, to whose grasping disposition,
more than to any other cause, Mr. Brown's troubles
were due, scheming to take advantage of the very dis-
couragements those troubles caused, scheming to take
advantage of Mr. Brown's moods in order to trade him
out of what Mr. Stewart knew was his only probable
means of support."   A further accusation fairly deduci-
ble is that Stewart falsely induced Brown to believe
that Pierce and Wallace desired to get hold of a major-
ity of the stock, and to sacrifice Brown's interest.   Also
that, although Mr. Wallace's right to some of the stock
antedated Stewart's, it was not Stewart's purpose to
recognize that right if he could avoid it, and simulated.
surprise, and declared that he had bought no contract

from Mr. Brown to sell to Mr. Wallace. Considering the entire letter in the light of the circumstances alleged, it certainly must be understood as accusing the plaintiff of fraud, deception, and dishonesty in purchasing the stock from Mr. Brown. It charges him with having, for the purpose of gain, availed himself of the confidence of Brown as a special and confiding friend, and of his necessities and moods, and by false representations induced Mr. Brown to sell the stock to him. Surely such accusations must expose the accused to public hatred and contempt, and deprive him of the benefit of public confidence and social intercourse. There is a just public sentiment that hates and condemns dishonest dealing and betrayal of friendship, and that denies to the betrayer the confidence and social intercourse that would otherwise be accorded to him. While the statutory definition of libel is plain and easily understood, it is sometimes difficult to determine whether the facts alleged or proven in a particular case come within the definition. We are satisfied, however, that the petition in this case shows a cause of action under the statute, and our conclusion is that the demurrer should have been overruled.—*Reversed.*