H. L. Hughes, Appellant, v. Samuels Bros. et al., Appellees.

**LIBEL AND SLANDER:** Libels Per Se—Words Otherwise Innocent.
1  A publication consisting of words *eminently fit and proper in*

*themselves* may, when tested in the light of the facts and circumstances surrounding and attending the publication, constitute a libel *per se*.

PRINCIPLE APPLIED: Plaintiff and defendant were both undertakers. Plaintiff sued defendant, and alleged:

1. That defendant, without plaintiff's knowledge or consent, falsely wrote and signed plaintiff's name to the following card, to wit: "Bear in mind our Undertaking Department. Satisfaction guaranteed. H. L. Hughes."

2. That defendant maliciously mailed said card to divers residences of the community in which plaintiff and defendant were doing business, at a time when defendant knew that members of the families of said residents were ill, one resident receiving one of the cards while his wife was ill unto death.

3. That said card was so mailed with the malicious purpose on the part of defendant: (a) To cause said residents to believe that plaintiff mailed it; (b) to injure plaintiff in his reputation; (c) to cause said residents to refrain from patronizing plaintiff; and (d) to incite indignation and hatred in the minds of said residents against plaintiff and his business.

4. That the mailing of said card had the effect intended by defendant.

5. That the publication of said card tended (a) to provoke plaintiff to wrath, (b) to expose him to public hatred, contempt and ridicule, and (c) to deprive him of the benefits of public confidence and social intercourse.

6. That thereby plaintiff had been damaged in a named sum.

*Held*, (1) that the pleading revealed a libel *per se*, and (2) that a general allegation of resulting damages was sufficient.

**LIBEL AND SLANDER:** Libels Per Se—Definition. A libel *per se* is any publication (a) which is made maliciously, (b) which naturally, either from the nature of the words themselves or from the facts and circumstances attending the publication of words otherwise innocent, produces hurt to the good name and reputation of the person concerning whom it is published, and (c) which tends (1) to provoke such person to wrath, *or* (2) to expose such person to public hatred, contempt or ridicule, *or* (3) to deprive such person of the benefits of public confidence and social intercourse.

PRINCIPLE APPLIED: See No. 1.

**LIBEL AND SLANDER:** Pleading—Special Damages. A general plea of damages is all-sufficient, if the natural tendency of the words of a malicious publication be, either of themselves, when

standing alone, or in connection with the circumstances at-
tending and surrounding the publication, to detract from the
good name and reputation of the person concerning whom they
are published.

*Appeal from Buena Vista District Court.—N. J. Lee, Judge.*

TUESDAY, OCTOBER 17, 1916.

REHEARING DENIED SATURDAY, MAY 12, 1917.

ACTION to recover damages for an alleged libel. Opin-
ion states the case. Demurrer to petition sustained. Plain-
tiff elected to stand on his petition. Thereupon, his peti-
tion was dismissed, and judgment entered against the plain-
tiff for costs.—*Reversed.*

*Bailie & Edson,* for appellant.

*Faville & Whitney* and *James Deland,* for appellees.

GAYNOR, C. J.—Plaintiff and defendant
both reside in the city of Storm Lake, and
each is and was engaged in the retail furni-
ture business, and, as an incident thereto,
carried on a business of undertaking. Defendants are a
copartnership. The plaintiff claims that, on the 6th day of
October, 1914, the defendants falsely and maliciously com-
posed and published of and concerning the plaintiff, the fol-
lowing: "Bear in mind our Undertaking Department. Sat-
isfaction guaranteed. (Signed) H. L. Hughes;" that the
defendants caused the same to be printed on a card and
mailed to the address of one Albert Cattermole, a citizen
and resident of Storm Lake; that, at the time the card was
mailed, the wife of the said Cattermole was lying critically
ill in a hospital in Storm Lake; that of this fact the defend-
ants had full knowledge at the time they composed and pub-
lished said statement; that they composed and published
it for the malicious purpose of injuring the plaintiff in his
reputation and business as aforesaid; that the same, as so
published, tended to provoke plaintiff to wrath and expose

*Marginal note:* 1. LIBEL AND SLANDER: libels *per se:* words otherwise innocent.

him to public hatred, contempt and ridicule, and to deprive him of public confidence and esteem and social intercourse; that the same was further published for the malicious and wicked purpose of causing the said Albert Cattermole and members of his family, and others to whom the said card or letter might become known, to believe that plaintiff sent the card, and for the further purpose of inducing the said Cattermole to refrain from patronizing the business of the plaintiff; that the publication was further made for the purpose of inciting indignation and hatred in the minds of said Cattermole and the members of his family towards the plaintiff and his business as an undertaker, and that it did this; that similar cards were sent to other persons under similar circumstances, and for the purposes aforesaid.

To this petition, defendants filed a demurrer, the substance of which is that the plaintiff's petition stated no cause of action; that the words published were not libelous *per se,* and no special damages are alleged to have been suffered by the plaintiff on account of its publication. This demurrer was sustained by the court. Plaintiff elected to stand upon his pleading and not to plead further, and his petition was thereupon dismissed, and from the action of the court in the premises, plaintiff has appealed to this court.

This case presents but one question: Is the publication charged to have been made by the defendants libelous *per se?* If the publication as applied to the situation of the parties is libelous *per se,* then the demurrer was not well taken. Our statute, Section 5086, Code of 1897, provides:

"A libel is the malicious defamation of a person, made public by any printing, writing, etc., tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse."

To be libelous, therefore, the publica-

2. LIBEL AND
SLANDER : libels
*per se*: defini-
tion.

tion must be malicious. It must be defama-
tory, and tend to provoke the person con-
cerning whom it is published, to wrath, or
expose him to public hatred, contempt or ridicule. When
this card is read, the mind naturally searches for the mean-
ing to be gathered from it, and the impression which its
publication·would make on the mind, and the purpose of
its publication. What is said and what is done always
has its proper relation to time, place, conditions and cir-
cumstances. It appears that Cattermole's wife was sick
unto death at the time this card was composed by defend-
ants and sent to him. The defendants knew this fact at
the time they composed and mailed the card. We take
judicial notice of the fact that the city in which the parties
resided was not so populous that the active business men
of the city were not known to each other and to the general
public. The card was so framed and mailed by the defend-
ants as to lead the receiver to believe that the plaintiff had
composed and mailed it, and this was their purpose in mail-
ing it. What possible reason could they have in preparing
and publishing this card? Was it to help a rival? Was it
to exploit the business of a rival? Was it intended as a
letter of credit to the public, by and through which he
would be better installed in its confidence and esteem? Is
this the usual and ordinary course of procedure on the part
of rival business firms? With the largest charity, we can-
not think this was the purpose of the publication. What,
then, was the purpose in the minds of these defendants
when they composed and sent these cards to the sick and
dying in that· community? Was it not, rather, as the pe-
tition says, to deprive plaintiff of public confidence and
esteem? Was it not, rather, to expose him to public con-
tempt and ridicule? Was it not, rather, to divert business

from the plaintiff through this means and to injure him by such diversion?

Cattermole's wife was sick unto death at the time he received this card—confined in the hospital. What impression would this card make upon his mind? Would it not bring before him the spectacle of a vulture waiting to prey upon the dead—a man without sympathy for the living because he found more revenue in the dead? What is it that these defendants meant by this thing that they have done? What end had they in view? We think, surely, that which the petition charges, to wit, to injure the plaintiff in his reputation and business, to expose him to public contempt or ridicule, to deprive him of public confidence and esteem. What, then, would be the natural and ordinary effect of such a card upon the mind of one to whom it was sent, under the conditions attending Cattermole? Surely, it would bring the sender of such a card, under the conditions then existing, into contempt and hatred, and deprive him of public confidence and esteem. Can the thought be entertained for a moment that, after the receipt of a card like this, under those circumstances, the receiver would patronize the sender in the event the stricken wife had died? Was it to secure this for the plaintiff that the card was sent? Published words which directly tend to the prejudice or injury of a person in his office, profession or business, are actionable. *Williams v. Davenport,* 42 Minn. 393 (44 N. W. 311).

Any publication calculated to expose one to public hatred, contempt or ridicule is libelous *per se. Dressel v. Shipman,* 57 Minn. 23 (58 N. W. 684).

The general rule is that, when language is published concerning a person or his affairs, which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication is libelous *per se.* See Townshend on Slander

and Libel (4th Ed.), Sections 146 and 147; *Fry v. McCord,* 95 Tenn. 678 (33 S. W. 568).

3. LIBEL AND SLANDER: pleading: special damages.

Peculiar damages are required to be alleged only when the publication, with its attending facts and circumstances, is such that damages do not naturally arise from the publication. If the publication, with its attending facts and circumstances, is such that the court can legally presume that injury followed as a natural and inevitable consequence of the act complained of, then there is no occasion, in order to maintain an action, that the plaintiff allege or prove peculiar damages. If the nature and character of the publication, with its attending facts and circumstances, are such as to injuriously affect or detract from the reputation and standing of another, and, as a natural and proximate result, tend to bring him into public contempt, hatred or ridicule, then it is libelous *per se.* If such injury can be said to be a natural proximate result or consequence of its publication, then the plaintiff is presumed to have been damaged, and there is no need of any allegation of peculiar damages. The extent of the damages is for the jury.

It is the venom of poisoned speech that constitutes the libel. In tracing the wrong that flows from the publication, we come first to the mind of the reader, and inquire what effect it would naturally have upon the ordinary thinking mind. We first consider the facts published, and the circumstances under which they were published, and the persons to whom a knowledge of the publication was brought. The inquiry arises: Would such a publication, under such circumstances, naturally tend to poison the mind against the person concerning whom the matter was published? If the matter published can be said, in its natural effect upon the mind, to produce hurt to the good name, fame and reputation of the person about whom the publication is made,

then we say the matter is defamatory, and the person necessarily has suffered not only wrong, but damages, as a proximate result of the wrong; damage to his good name, fame and reputation in the community. If the words in and of themselves, when published, do not tend to this effect naturally and of their own force and vitality, the mind naturally inquires into the circumstances under which they were published, the manner of their publication, and the persons to whom a knowledge of the publication was brought. This inquiry is pursued to ascertain the effect which the publication, under the circumstances, would naturally have upon the mind of the person to whom a knowledge of the publication was brought. If the words and the circumstances attending their publication would not naturally affect the mind prejudicially against the person concerning whom the publication is made, it must be alleged and shown not only that they were used in a defamatory sense, but that they were so understood by their hearers. When words, innocent in themselves, are charged to have been intended and used in a defamatory sense, it must be alleged and proven that they were intended in a defamatory sense, and were so understood by the persons to whom they were addressed. If they do not themselves convey a defamatory meaning, or an imputation that is defamatory, something must be alleged which shows, or tends to show, that the user of the words intended them in a defamatory sense, and that the persons to whom a knowledge of the publication came were affected in their mental attitude towards the person, to the injury of his good name, fame and reputation. The publication may be so worded that this could not be gathered from the publication itself. It may be innocent and even commendatory in itself, yet the facts and circumstances attending the publication, the relationship of the parties, the defamer and the defamed, to the public may be such, considered in the light of the

subject matter concerning which the publication is made, that it is apparent that there was not only an intent to defame, but that a defamatory imputation was so exposed that the ordinary mind easily grasped the purpose of the publication and its injurious consequences to the good name, fame and reputation of the defamed. Men receive impressions of and concerning others from what they hear others say about them. Libel is a tort. It consists in a wrong done to the good name, fame and reputation of another. It is in the nature of an assault upon the good name, fame and reputation of another. The law protects a man in the possession of his good name, and denies to others the right wrongfully and wickedly to make an assault upon it. It is often the only asset a man has. Rob him of this, and you rob him of all that he has in life that makes life worth living.

A physical assault is clearly understood and easily defined. One may be punished criminally or mulcted in damages civilly for physical assault. Libel is an assault upon that invisible and intangible thing known as reputation. Though invisible and intangible, it exists among men and is prized, and the law protects it. As has been said by this court, libel rests upon the thought that a public wrong has been committed; an act has been done, in violation of the statute, to the hurt of the complaining citizen. A citizen's right to remain secure in his good name and reputation among his fellows, and to enjoy their confidence and esteem, has been violated. A libel is that which tends to take from him one of his most valuable rights—his right to the confidence, esteem and respect of his fellow men. One who, by right living and right conduct, has built up for himself an enviable name among his fellows, and has drawn to himself their confidence and esteem, is entitled to retain and enjoy the same, and one who, wrongfully and maliciously and without just cause, makes an assault thereon

and impairs or injures the same, does a grievous wrong, for which he is answerable in damages. It is true that the wrong must be found in the publication, not merely in the wording of the thing published. The injury must flow from the publication. The damage must be the natural and proximate result of the publication—a result that usually, naturally and ordinarily follows as a result of the wrong done. Though the article itself conveys no wrong impression concerning the complainant, and in and. of itself could do no harm, it may become most injurious, most hurtful; it may become a direct assault upon the good name, fame and reputation, because of the manner and circumstances under which it was published. The publication must be libelous, not necessarily the article in and of itself.

"A libel is the *malicious defamation of a person,* made public by any writing," etc. It is the malicious defamation against which the inhibition of the statute is raised—malicious defamation made public by writing. A writing made public which is intended to, and does because of its publication, tend to provoke to wrath, to expose to public hatred, contempt or ridicule, or which deprives one of the benefits of public confidence and social intercourse, is libelous *per se.*

Every written publication, maliciously made, defamatory of another, which tends to any of the consequences set out in the statute, is a violation of the inhibitions of the statute. It is, therefore, a wrong done to a citizen in violation of the statute. It is, therefore, actionable *per se.* The fact that it is a violation of the inhibition of the statute makes it actionable *per se.*

In contemplation of law, reputation is a delicate plant, withered by the breath of scandal. Any publication which imputes to another conduct which right-thinking men condemn, whether the conduct involve a crime, moral turpitude,

or any conduct in life, purpose, or manner of living which the common sense of right-thinking men condemns, is presumed in law to have injuriously affected the reputation of the person so assailed, and, by such injury, to have caused him some damage. It follows, therefore, that libel is an assault upon character resulting in some injury to the reputation. The injury must be traceable to the assault, and the damage must be the proximate result of the injury. Everyone recognizes the blighting effect of scandalous utterances directed against the character, conduct, or reputation of men. Everyone recognizes that such assaults, publicly made, tend injuriously to affect the reputation and standing of the one so assailed among his fellows. It is from the recognition of this that the law implies damages, without allegation or proof of special damages. Defamation consists in maliciously poisoning the minds of others against the party assaulted, by printing, writing, etc., thereby bringing on them some of the consequences provided against in the statute. The statute is intended to, and does, prohibit the malicious poisoning of the minds of others against a citizen, under the protection of the law, by the use of public printing, etc., and this inhibition attaches whether done directly by the wording of the thing complained of, or indirectly by insinuation, imputation or suggestion. The statute is intended to protect one in a right, and to deny to others the liberty to invade that right.

With no explanation from the defendants, we may rightly assume that they prepared and mailed this card for the purpose hereinbefore indicated, and that the consequences charged in the petition were the consequences that naturally flowed from the thing done. We think the pleading was sufficient to present the question to the jury. As supporting what we have said, see *Call v. Larabee*, 60 Iowa 212; *Hollenbeck v. Ristine*, 105 Iowa 488; *Halley v. Gregg*, 74 Iowa 563, 564. In the latter case, it is said, in

substance, that, if the act charged constitutes a libel, as defined by the statute, it is actionable *per se*. See *Zier v. Hofflin*, (Minn.) 53 Am. Rep. 9, in which it is said:

"Words which may be innocent of themselves may be rendered libelous by the place and circumstances of their publication, for such place and circumstances may impress on them a meaning and suggestion which, standing alone, they do not have. Thus, though the words here do not of themselves impute wrong, they might be published in such a place or under such circumstances as to make them capable of naturally conveying the impression that plaintiff had been guilty of dishonest practices, either in contracting the debt or in withholding payment of it. * * * What meaning they would naturally convey was for the jury to determine in view of the circumstances of their publication."

*State of Missouri v. Armstrong*, (Mo.) 13 L. R. A. 419, together with citations and annotations. *Nichols v. Daily Reporter Co.*, (Utah) 3 L. R. A. (N. S.) 339.

We find no case directly in point on the questions here considered. We think, however, the plaintiff presented a fair question for the jury, and the court erred in sustaining the demurrer, and the cause is, therefore,—*Reversed.*

LADD and EVANS, JJ., concur.

SALINGER, J.—(specially concurring). There is language in the opinion which indicates that there may be libel which is not libel *per se*. I do not wish to be bound by it. I think it settled by our cases that whatever is libelous is libelous *per se;* that the action for libel rests on the fact that a crime has been committed; and that, therefore, the law presumes damage if a libel is established.