JOHN R. TURNER, Appellee, v. SAM BRIEN, Appellant.

LIBEL AND SLANDER: Libels Per Se—Ordinary Effect of Language—Presumptions. Any publication is a libel *per se,* and hence actionable *per se,* if the natural and ordinary effect of such publication, when viewed and judged in the light of the circumstances attending such publication, is to expose the one at whom it is leveled, to public hatred, contempt, and ridicule, or to deprive him of public confidence and esteem; and on such a libel the law supplies, by rebuttable presumption, the elements of (a) falsity (if falsity be material), (b) malice, and (c) damage in some amount; and the jury should be so instructed. (Sec. 5086, Code, 1897.)

*Held* that a publication was libelous *per se* which, in substance, asserted that plaintiff was a poor credit risk, unworthy of credit, and ought not to be trusted.

LIBEL AND SLANDER: Justification—Insufficiency. A good plea in justification must be not only as broad as the literal language of the publication, but as broad as the *inferences of fact* necessarily flowing from the literal language.

*Appeal from Des Moines Municipal Court.*—JOSEPH E. MEYER, Judge.

MAY 17, 1918.

REHEARING DENIED SEPTEMBER 20, 1918.

ACTION for libel. Verdict and judgment for the plaintiff. Defendant appeals. Opinion states the facts.—*Affirmed.*

*Dunshee, Haines & Brody,* for appellant.

*S. B. Allen,* for appellee.

GAYNOR, J.—This is an action for libel. Plaintiff is a laboring man. Defendant runs a grocery store. During the years 1914 and 1915, plaintiff became indebted to the defendant for groceries, and appears not to have been able, or not to have been willing, to pay. Thereupon, defendant refused him further credit, and plaintiff went elsewhere for his groceries. Plaintiff claims that his failure to pay was due to the fact that the defendant had overcharged him, and was insisting on $20, when there was, in fact, but $16 due; that he offered to pay the $16, but refused to pay the $20; that the defendant insisted on the $20, threatened him with personal violence, and also threatened to see that plaintiff lost his job. The record shows a clear dispute between the parties as to the amount due, and there is controversy as to the reasons assigned by the plaintiff for refusal or neglect to pay. While this controversy was on, the defendant caused to be published, in a pamphlet issued by a certain Trust Book and Credit Company, the following:

1. LIBEL AND SLANDER: libels *per se*: ordinary effect of language: presumptions.

"Turner, John R., pkr., 802 e 23d. . . . . . . . . .37—$20.00."

This was afterwards superseded by a bound volume, which was issued on the 24th day of November, 1915, and in the bound volume appeared:

"John Turner. Watch, 802 E 23d Court. . . . . . . .MSR"

The publication contained a key, which explained the language used as follows: "M—Medium Pay. S—Slow Pay. R—Party reporting would require cash in future dealings."

The figure 37, appearing in the first report before the figures $20, indicates the party conveying the information to the Credit Company for publication; and this record shows that the person so indicated was the defendant in this suit. The explanation given by a witness who had knowledge of the internal workings of this Credit Company is that the report indicates that, on the 23d day of February, 1915, the

defendant reported that the plaintiff was indebted to him in the sum of $20. The letter "R" indicates that the defendant reported that he would not extend further credit to the plaintiff; that he would require cash. This publication was made by the company for the enlightenment of retail dealers from whom plaintiff might desire to make purchases. Each subscriber to this company receives one of these publications, with a key explaining the meaning of the entries opposite the name of each party complained of. In the fall of 1915, the plaintiff made arrangements with the defendant to pay this account, and completed his payment in the month of January, 1916. He paid the sum of $16 in full of the account. These publications still appeared in the bound volume, unchanged, after the arrangements had been made for payment, and after payment was made.

Plaintiff claims that, after these publications were made, he was refused credit by various merchants; that said publications were intended to and did provoke the plaintiff to wrath, and did deprive him of the benefit of public confidence and intercourse, and exposed him to public hatred and ridicule; and that said publication was made for the purpose of disgracing this plaintiff among the retail dealers of Des Moines; and that it had the effect intended; that, after said publication, he applied to several firms for credit, and was refused; that some of said parties, after reference to this book, refused credit to him.

This statement is sufficient for the purpose of an intelligent review of the matters complained of on this appeal.

The jury returned a verdict for the plaintiff for $250, which was reduced by the court to $75, and judgment entered in favor of the plaintiff for $75. From this judgment, defendant appeals, and complains:

(1) That the court erred in its rulings on the admission of evidence. As no exceptions were preserved to these rulings, they will not be considered.

(2) That the court erred in overruling a motion made by the defendant at the conclusion of all the evidence, for an instructed verdict. No exceptions were preserved to this, and it is not, therefore, considered.

(3) That the court erred in refusing to give certain instructions asked by the defendant.

As to this, we have to say that, in so far as the instructions asked were pertinent to the issues tendered, they were given, substantially, by the court in the instructions given to the jury, and, therefore, the refusal was without prejudice.

The other complaints are bottomed on the thought that the publication is not libelous *per se,* and that, therefore, special damages must be alleged and proven, before plaintiff is entitled to recover. It is further urged that the court should have said to the jury that the words are not actionable *per se,* and that no recovery could be had except on proof of special damages. It is to these last propositions that we address ourselves. The plaintiff, in his petition, alleges that the publication was false and untrue, and known to be false and untrue by the defendant herein when he caused the same to be published and circulated; that he caused the publication to be made with the intent to provoke the plaintiff herein to wrath, and to deprive him of the benefit of public confidence, and for the sole purpose of disgracing this plaintiff among retail dealers in Des Moines; that the same was published wilfully and maliciously, and for the purpose and intent aforesaid; that the effect of said publication was to deprive plaintiff of the benefits of public confidence in the city of Des Moines; and that he has been damaged thereby.

Criminal libel is defined by our statutes to be "the malicious defamation of a person, made public by any printing, writing, * * * tending to provoke him to wrath * * * or to deprive him of the benefits of public confidence and social in-

tercourse" (Section 5086 of the Code, 1897) ; and this defi-
nition has been accepted as applicable to civil actions. See
*Stewart v. Pierce,* 93 Iowa 136.

It has been the general holding by this court that any
publication which comes within the statutory definition of
libel is actionable *per se*: that is, upon proof of such pub-
lication, the law will presume the falsity of the matter
charged; that the publication was with malice; and that
some damages followed. In this it differs from publications
·which are not actionable *per se*. In such publications the
burden of proof remains upon the plaintiff, in respect to
all these matters, and recovery can be had only upon the
allegation of proof of special damages.

It seems to be the thought of the defendant that, in con-
struing this publication, we are confined to a literal inter-
pretation of the language used, disassociated from the pur-
poses and intent and consequences that may follow from
the thought which is suggested by the language used. If
the publication is made maliciously, and for the purpose
and with the intent of injuring the plaintiff, and would,
in its ordinary meaning and purpose, tend to expose one
to public hatred, contempt, or ridicule, or deprive him of
public confidence or esteem, it is actionable *per se*. That
is, if, upon the face of the publication, this would be the
usual and ordinary effect upon the minds of other people to
whom it comes, it must be presumed that it had that effect
—the effect that it usually and ordinarily has upon the mind.
It is the thought conveyed to the minds of others by the pub-
lication that produces the poison which defames the good
name and character of the person assailed. If the effect of
such publication is usually and ordinarily to convey to the
mind the existence of an assumed fact that affects prejudi-
cially one about whom the publication is made, or tends to
provoke him to wrath, or to expose him to public hatred,
contempt, or ridicule, or to deprive him of public confidence

or esteem, the law presumes that it worked that effect, and the burden is on the defendant to negative these presumptions. The jury could well find that the thought conveyed and intended to be conveyed was that the plaintiff was not worthy of credit. It was a warning to the public not to trust him. Such publications usually and ordinarily have the effect of depriving one of public confidence and esteem. The general rule is that any publication concerning a person or his affairs, which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, is libelous *per se*. To say of one, "I have trusted him, he has failed me, I would not trust him again," and to publish this, is to say to the public: "This one is not worthy of your confidence or your credit. You should require cash of him in your dealings." The record shows a clear dispute, not only as to the account, but also as to why the account was not paid.

In ascertaining the thought intended to be conveyed by this publication, we cannot disassociate the circumstances under which the publication was made from the publication itself, or the purpose that prompted it. The jury could well find that, while the Credit Company published the information for the good of its patrons, this was not the purpose of the defendant. The purpose was to expose plaintiff to contempt, and to deprive him of the confidence and esteem of the public, and to affect his credit and standing among the retail business men of Des Moines. This, the jury could well have said under this record. This is the purpose which the plaintiff charges the defendant with having intended to accomplish by the publication. There is evidence that the purpose was accomplished. The words were actionable *per se,* as charged. The evidence supports the allegations of the petition. Damages are presumed.

It is true that the court should have told the jury, in its instructions, that the words were actionable *per se,* and

that malice and damages were presumed; but its failure to do this did not prejudice any right defendant had in this suit; and of this it cannot complain. Special damages are required to be alleged and proven only when the publication, with its attending facts and circumstances, is such that damages do not naturally arise from the publication. If the publication, with its attending circumstances, is such that the court can presume legally that injury followed as a natural and inevitable consequence of the act complained of, then there is no occasion that the plaintiff allege and prove special or peculiar damages. If the publication complained of usually, ordinarily, and naturally detracts from the reputation and standing of the plaintiff, and tends proximately and naturally to deprive him of public confidence and esteem, and is maliciously made, then it is libelous *per se,* and special or peculiar damages are not required to be alleged or proven. The injury, however, must flow from the publication, but not necessarily from a literal interpretation of the words used in the publication. It is the thought conveyed, not the words, that does the harm. One who is charged with refusing to pay an honest debt is charged with dishonesty—a charge which, if believed, affects his good name, fame, and reputation among his fellows, and deprives him of public confidence and esteem. We say, therefore, that the plaintiff charged a publication which was libelous *per se,* and that the proof supports the charge.

It is contended that the publication was true. In its literal interpretation, we may assume that this contention is right; but in the broader scope and purpose of the publication, it is not shown to be true. It may be

2. LIBEL AND SLANDER: justification: insufficiency.

true that the plaintiff owed the defendant a sum of money. It may be true that the defendant would not thereafter trust him; but it is not true or shown to be true that the plaintiff was not worthy of credit, and that others, dealing fairly with him,

could not trust him; and this is the thought which the jury could well find that the defendant intended to convey and did convey by the publication made.

As supporting these conclusions, see *Codner v. Central C. R. Agency*, 180 Iowa 188; *Hughes v. Samuels Bros.*, 179 Iowa 1077; *Sheibley v. Ashton*, 130 Iowa 195; *Morse v. Times-Republican Printing Co.*, 124 Iowa 707; *Halley v. Gregg*, 74 Iowa 564; *Call v. Larabee*, 60 Iowa 212.

Upon the whole record, we find no ground for interfering with the judgment of the court below, and the cause is —*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.