E. G. MILLER, Appellant, v. FIRST NATIONAL BANK of Gladbrook, et al., Appellees.

No. 42959.

DECEMBER 17, 1935.

Boardman & Cartwright, for appellant.

D. B. Kliebenstein, and Reed, Beers & Graham, for appellees.

PARSONS, J.—The plaintiff herein, E. G. Miller, is the appellant in this case, and the defendant First National Bank of Gladbrook, Iowa, is the appellee in the case, as is Martin Mee, the president of the defendant bank. The parties hereinafter will be designated as plaintiff and defendant.

The petition alleges that the plaintiff consigned 174 head of sheep to a Chicago firm, Alexander Conover & Company, which were received on or about the first of December, 1930, at Chicago, and were sold by the consignee to Swift & Co. for the account of the plaintiff; that on the 2d day of December, 1930, the defendant advised the consignee "that the bank had a chattel mortgage on said shipment of sheep and that the proceeds of the sale should be held intact subject to its claim", and on account of the claim of defendants the consignee held up the payment of the sale price of $784.71.

It was further set up in the petition that the defendants were without right to claim that the sheep were the property of one Reisinger, and were covered by a chattel mortgage which the bank held, and alleges that such sheep were the absolute property of the plaintiff and that Reisinger at no time had any right, title, or interest in said sheep, and that they were placed upon the Reisinger farm for the purpose of pasturing and feeding by Reisinger, for and on behalf of the plaintiff. It sets up further that the defendant, through its officers and agents, by claiming a mortgage on said property, was attempting to state that plaintiff was trying to assist Reisinger dispose of mortgaged property, which the plaintiff avers to be libel per se. He also sets up that the defendant bank and its officers continued to claim the funds in the hands of the consignee and to claim a mortgage upon the sheep until February 2, 1932, at which time

the funds were released.  It alleges also that the plaintiff had been obliged to employ the law firm of Boardman & Cartwright to represent him, and had expended $350 for their services, which was reasonable, and that several trips were made by the plaintiff at an expense of $70; that the plaintiff was a large dealer in livestock in Marshall county, and adjoining counties, and enjoyed the confidence of a large number of livestock dealers and commission men in all parts of the middle west; that the wrongful and malicious acts of the defendants had caused the plaintiff great damage to his reputation and good name; and asked for judgment against the defendants in the sum of $25,000.

The defendant filed a motion to strike the petition in that it failed to state a cause of action; in that the statement claimed to have been written by the defendants was not a libel per se, and no special damage had been alleged, and that there was no allegation that said statement was made maliciously.  In a paragraph of the motion to strike the defendant asked to strike from the petition of plaintiff the paragraph ending with the words, ''subject to their claim'', for the reason it was immaterial and surplusage and stated no cause of action against the defendant.

Paragraphs 3 to 10 of the motion also asked to strike certain parts of the petition, but it is impossible to tell what parts came in those paragraphs because they are not otherwise identified than by the page of the original pleading, and we do not have that before us.  However, this motion to strike was by agreement of the parties submitted to the court as a demurrer, and on the 7th of December, 1934, the court sustained the demurrrer, and on the 11th day of December, 1934, the plaintiff elected to rtand upon the ruling of the court sustaining defendants' demurrer to plaintiff's petition and refused to plead over.  Petition was dismissed, judgment was entered against plaintiff for costs, to all of which plaintiff excepted and appealed to this court.

However, as the defendant seems to have moved to strike each and every allegation of the petition for the various grounds set out, it was perhaps as well to treat this demurrer as a motion.

Our statute treating of demurrers in causes of actions at law, in section 11141, says:

''In actions triable at law, any party may demur to any'

pleading filed by any adverse party upon one or more of the following grounds appearing on its face." There were six numbered subdivisions of this section, No. 5 being, "That the facts stated in the pleading attacked do not entitle the adverse party to the relief demanded."

We gather from the petition that the action complained of by the plaintiff is in writing to Alexander Conover & Co. "that the bank had a chattel mortgage on said shipment of sheep, and that the proceeds of said sale should be held intact subject to their claim". This is the only thing set out in the petition as to what was said or done. It further sets out that the bank, without right, claimed the sheep to be the property of Reisinger and consequently were covered by a mortgage which the bank claimed to own on certain livestock owned by Reisinger. There is no allegation anywhere in the petition that any of these acts were done maliciously, except if it be found in the paragraph of the plaintiff's petition reading:

"That the defendants through its officers and agents, by claiming a mortgage on said sheep aforesaid, did infer and state that this plaintiff was attempting to assist the said C. A. Reisinger in disposing of his mortgaged property, which statement this plaintiff avers to be libel per se."

It is difficult to see how, if the bank in good faith was claiming the proceeds of the shipment under the thought and belief that it had a mortgage upon the property, it would be guilty of libel or slander in writing as it must have written, or in communicating otherwise with Alexander Conover & Co., the statement quoted heretofore. At best, it is difficult to see how it could have been even slander of title, which formerly was an action only for slander of title to real property. It at present may be predicated on either real or personal property. 37 C. J. section 595.

It is also laid down in such an action that malice is a necessary ingredient to entitle plaintiff to recover; that it is the gist of the action; that it cannot be maintained if the claim was asserted by defendant in good faith, and if the act complained of was founded upon probable cause or was prompted by a reasonable belief, although the statement may have been false. 37 C. J. section 598.

Section 591 of 37 C. J. also provides that "slander of title" may be defined as a false or malicious statement, oral or written, made in disparagement of a person's title to real or personal property or some right causing some special damage.

This is also well supported in Fearon v. Fodera et al., 169 Cal. 370, 148 P. 200, and Ann. Cas. 1916D, 312, which lays down the rule that, "Malice, express or implied, in the making of slanderous statements, is an essential element of an action for damages for slander of title, without proof of which the action must fail." This quotation is from the note, and cites thereto Canadian cases, federal cases, cases from Alabama, California, Colorado, Indiana, Kansas, Louisiana, Massachusetts, Michigan, Missouri, Nevada, New Jersey, North Carolina, Pennsylvania, Rhode Island, and Wisconsin. The note lays down the rule, Ann. Cas. 1916D, on page 320, that "where the evidence shows that a privileged statement in slander of title was made in good faith and solely to protect the interest of the person making it, malice will not be presumed in law, nor can he be held liable for a mere mistake on his part."

"Libel", in section 13256 of our Code 1931, is as follows:

"A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation, or effigy, tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse; or any malicious defamation, made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives or friends."

36 C. J. 1145, says:

"Often the statutes define 'libel'; then such statutory definitions govern. Where a statute gives a full and complete definition of 'libel' no other definition may be considered in arriving at a conclusion as to whether a publication constitutes libel."

The plaintiff in his brief says: "The acts of the defendant bank had a natural tendency to injure the plaintiff in his business, therefore, it was libelous per se," and cites Morse v. Times-Rep. Printing Co., 124 Iowa 707, 100 N. W. 867; Hughes v. Samuels Bros., 179 Iowa 1077, 159 N. W. 589, L. R. A. 1917F,

1088; Turner v. Sam Brien, 184 Iowa 320, 167 N. W. 584, 3 A. L. R. 1585; Burghardt v. Scioto Sign Company, 191 Iowa 384, 179 N. W. 77. We have examined these cases and cannot see how they support the text of plaintiff's statement. Morse v. Printing Co. concerns a statement published in a newspaper at Marshalltown, Iowa. It is true that the article did not exactly charge the defendant therein with a crime, but it did contain matter which, if read by the plaintiff, would tend to provoke him to wrath, and if read by others would tend to expose plaintiff to the public hatred and contempt, and ridicule him, so as to deprive him of public confidence and social intercourse. In Hughes v. Samuels Bros., the parties were both undertakers, and the defendant, without plaintiff's knowledge or consent, falsely wrote and signed the plaintiff's name to cards, saying, "Bear in mind our Undertaking Department. Satisfaction guaranteed. (Signed) H. L. Hughes", and maliciously mailed these out to various residents in the community in which plaintiff and defendant were doing business, at a time when defendant knew that members of the families of said residents were ill, one resident receiving one of the cards while his wife was ill unto death, and that the card was so mailed with malicious purpose on the part of the defendant to cause the resident to believe that plaintiff mailed it, and to injure the reputation of the plaintiff and to cause the resident to refrain from patronizing the plaintiff, and to incite indignation and hatred in the mind of said resident; and that the mailing of the cards tended to provoke the plaintiff to wrath, and to expose him to public hatred, tending to ridicule him. Turner v. Brien, 184 Iowa 320, 167 N. W. 584, 3 A. L. R. 1585, was an action against a credit firm for publishing the name of the plaintiff. The plaintiff charged that this action on the part of the defendant was to break down his credit, and even after he had paid the bill in question plaintiff's name still appeared in the report as one unworthy of credit. Held, that the publication was libelous per se, which, in substance, asserted that plaintiff was a poor credit risk, unworthy of credit. Burghardt v. Scioto Sign Co., 191 Iowa, 384, 179 N. W. 77, was a case wherein an employer made a written published charge that an employee had been guilty of dishonorable and unfaithful conduct toward his employer, of such a nature that such charge, if believed, would naturally injure the employee, and prevent him from securing employment, constituted a libel per

se. So we think there is nothing in these authorities that can be considered as bearing out the claim of plaintiff in this case.

Appellant makes a point in his brief that disposing of mortgaged chattels is a crime in the state of Iowa, citing Code, section 13037. A casual reading of this section will show that it is of no consequence here, for the section says:

"If any mortgagor of personal property or purchaser under a conditional bill of sale, while the mortgage or conditional bill of sale upon it remains unsatisfied, wilfully and with intent to defraud, destroys, conceals, sells, or in any manner disposes of the property covered by such mortgage or conditional bill of sale without the written consent of the then holder of such mortgage or conditional bill of sale, he shall be guilty of larceny and punished accordingly."

There is no charge in this case that the plaintiff was the mortgagor. The record discloses that he was not; that one Reisinger was the mortgagor; and there would be no intimation that the plaintiff herein was guilty of any crime under the section cited, even of assisting Reisinger in disposing of mortgaged property.

The plaintiff's brief, under the heading: "THE DEFENDANT BANK'S FALSE STATEMENT THAT IT HELD A MORTGAGE ON THE PROPERTY SOLD BY PLAINTIFF CONSTITUTES LIBEL 'PER SE' ", citing Eby v. Wilson, 315 Mo. 1214, 289 S. W. 639, 50 A. L. R. 268; also a Missouri case, Wilson v. Nat. Bond & Inv. Co. (Mo. App.) 46 S. W. (2d) 922, states in the argument part of the brief that he had been able to locate only two cases bearing upon this proposition, i.e., that the bank's statement to the effect that it held a mortgage on the sheep is libel per se. The case of Eby v. Wilson was decided on November 15, 1926, and in that case the cashier of a bank wrote a letter saying, "Please be advised that we hold an unsatisfied mortgage on a Chevrolet motor car which you purchased from the Eby Motor Company", and this was held libelous as against the Eby Motor Company. But it appeared therein that the Eby Motor Company dealt with the bank, and that the bank authorized and urged it to sell cars in the usual course of business, which meant free from mortgages, and it was shown in the case that the bank had no right to claim it had a mortgage on the dealer's cars. This same court in Wilson v. Nat. Bond & Inv. Co. (Mo. App.) 46 S. W. (2d) 922, 923,

in which a judgment was rendered in the lower court for the plaintiff, where a party had mortgaged a car, which mortgage was afterwards transferred to the bank, passed on this case. The plaintiff left Missouri and went to Texas, but he sent money back to pay the note owing to the defendant; the payment was made, but the agent of the defendant did not note it on the books, and so a letter was written to the purchaser of the car reciting the facts of giving a mortgage, and also claiming that there was a balance due on the mortgage of $140 with interest at 8 per cent and making demand upon the purchaser to pay the $140 with interest. The court in passing on this case said:

"This action is based on the letter above set out, and by scanning this letter closely it will be seen that the only thing stated in this letter that was not true is the fact that the mortgage upon the car given by plaintiff still had a balance due and unpaid on it of $140." Commenting on this the court said: "We think that it is not every untrue statement made about a party that will constitute libel. In order to constitute libel, it must have something in it that under a fair and reasonable construction charges something against the party·that will tend to bring him into disrepute with people who may be informed of the contents of the letter. All that can possibly be made out of this letter is a false charge that the plaintiff had given a mortgage upon an automobile and had not paid it. That certainly is not libelous. The letter does not state that he sold the car or that he disposed of it in any way. All it does say is that they had learned that a license had been issued to Della Lundquist and that the car was at the time of writing the letter in her possession. * * * It is clear to us that the letter is not libelous per se, and, if plaintiff undertakes to show that it was libelous in fact by reason of the fact that the party to whom the letter was written understood it to charge that plaintiff had sold or disposed of the car without the consent of the mortgagee and without notifying the purchaser of the existence of the mortgage, it is our judgment that such testimony would not be competent by reason of the fact that the letter is not capable of that construction." This case followed the Eby case, and was decided in February, 1932, more than six years after the Eby case, and we think more nearly lays down the rule applicable in this case.

Analyzing the letter written by the defendant in this case, to the consignee of the sheep, it does not say a word against the plaintiff; it merely advises that the bank had a chattel mortgage on said shipment of sheep, and that the proceeds of said sale should be held intact subject to its claim. That the bank believed it had such a claim is not disputed. That it was thought it was acting within its rights is not disputed. If the bank never had a mortgage upon sheep owned by Reisinger, that might put a different aspect on it.

The plaintiff avers that the bank, without right, claimed that said sheep were the property of one C. A. Reisinger, and consequently were covered by a chattel mortgage which the said defendant First National Bank of Gladbrook claimed to hold upon certain livestock owned by the said C. A. Reisinger. It can easily be seen how the bank might innocently make this claim, and that no one would have a right to infer from that that there was any imputation that there was anything wrong or crooked in the plaintiff; that it was merely asking that the money be held until the matter could be investigated.

That the statutory definition of "libel" is applicable to civil as well as criminal action is decided in Shaw Cleaners & Dyers, Inc., v. Des Moines Dress Club, 215 Iowa 1130, 245 N. W. 231, 86 A. L. R. 839, and charges that at the instance of the defendants an advertisement was published in the Sunday edition of the Des Moines Register, as follows:

"Garments Cleaned at Half-Price are only Half-Cleaned.

"When you buy cleaning for half price you get just what you pay for * * * half-way cleaning and pressing. Des Moines Dress Club prices are the lowest at which first quality workmanship can be produced. * * * The lowest at which a modern plant can be maintained. * * * The lowest at which skilled experts can be hired. Don't be misled by half-price cleaning.

"Out-of-town work especially solicited.

"We pay return charges.

"Dial 4—4141

"Des Moines Dress Club.

"The careful Cleaners & Dyers.

"801 Grand Ave.                                        Dial 4—4141."

The first point decided under this in this case is that the statutory definition is applicable in civil action to recover dam-

ages for libel, citing Stewart v. Pierce, 93 Iowa 136, 61 N. W. 388, 389; Gundram v. Daily News Pub. Co., 175 Iowa 60, 156 N. W. 840, 841; Fey v. King, 194 Iowa 835, 190 N. W. 519; Sheibley v. Ashton, 130 Iowa 195, 106 N. W. 618. In the case of Stewart v. Pierce, our court says:

"With this plain definition before us we need not refer to any of the many cases defining libel, but proceed to inquire whether this writing brings these cases within the terms of the statute."

In Gundram v. Daily News Pub. Co., the court says:

"Whether a publication relied upon is libelous within this statutory definition, and is therefore libelous per se, is always a question for the court."

In Berger v. Freeman Trib. Pub. Co., 132 Iowa 290, 109 N. W. 784, the court said:

"In another instruction the court submitted the question as to the libelous character of the article to the jury for its determination as to whether or not the language was libelous per se. The rule about this matter is well settled. It is this: Where the defamatory matter is unambiguous, the question of its meaning and character is for the court."

The statements in the case at bar were unambiguous. The bank simply claimed the mortgage upon the property, and asked that the proceeds be held. The further rule was, in the Berger case in determining whether the language is libelous per se, it must be stripped of any pleaded innuendo. The meaning of the phrase "per se" is "taken alone, in itself, by itself." Words which are libelous per se do not need an innuendo, and, conversely, words which need an innuendo are not libelous per se.

There are other authorities cited in this case, but we believe that these discussions here determine the rule that should be laid down, and in our opinion the district court was right in sustaining the demurrer to the plaintiff's petition, and in entering the judgment against the plaintiff, and for these reasons the decision of the district court in this case is affirmed.

KINTZINGER, C. J., and all Justices concur.