BOARDMAN & CARTWRIGHT et al., Appellants, v. GAZETTE COMPANY et al., Appellees.

No. 44225.

AUGUST 5, 1938.

534

Boardman & Cartwright, for appellants.

Don Barnes, E. H. Wadsworth, and R. S. Milner, for appellees.

Anderson, J.—This is an action for damages for alleged libel. The plaintiffs' petition discloses the following: The plaintiffs are attorneys engaged in the practice of their profession at Marshalltown, Marshall County, Iowa. The defendant, The Gazette Company, is a corporation and its principal business is the publication of a newspaper at Cedar Rapids, Iowa (The Cedar Rapids Gazette), which has a daily circulation of about 50,000 in central Iowa, including Marshall County; that the defendant Verne Marshall is the editor and in charge of the publication of the said Cedar Rapids Gazette and the defendant A. H. Burnstein is the operator of the Marshalltown News Agency and was the distributing agency in Marshalltown, Iowa, and as such sold and distributed the Cedar Rapids Gazette which contained the alleged libelous article which is the basis of this action.

The petition further discloses that the plaintiffs had been engaged for many years in the practice of law in the courts of Iowa and also in the various federal courts; that they enjoyed an established credit, a reputation for honesty and integrity, the reputation that in the practice of their profession they conformed to the ethics and standing required of those entrusted with the practice of law; that the said plaintiffs were sole attorneys for one Cooper who was charged with a criminal offense and was convicted on February 27, 1935, in the district court of Linn County, Iowa, and on the same day an appeal to the supreme court was perfected; that while the statutes of the State gave to the defendant and his attorneys one hundred twenty days within which to file an abstract in the supreme court, the plaintiffs waived such statutory time and filed their abstract in the supreme court on the 16th of April, 1935, or about two and one-half months before the expiration of the time allowed by

the rules of the supreme court; that on the 17th of April, 1935, these plaintiffs acting for their client, Cooper, moved the supreme court to advance the date of hearing of the appeal to the May 1935 term thereof and the supreme court so ordered, which was in fact six months in advance of the normal period for submission of the appeal; that upon request of counsel representing the State of Iowa the submission of said appeal was continued to June 1935; that the supreme court on its own motion and over the objections and protests of plaintiffs continued the appeal case to the September 1935 term of said court; that these plaintiffs were in sole charge of the appeal in said criminal case and all of the foregoing facts were well known by all of the said named defendants. That with the record as above stated the said defendants did on or about the 4th day of May, 1935, print, publish, circulate and distribute in Marshalltown, Iowa, and in many and divers points in the state many thousand copies of the Cedar Rapids Gazette containing on its front page the alleged libelous article, to which we will later refer. And plaintiffs further allege in their petition that the alleged libelous article was published of and concerning the plaintiffs; that it was false and untrue; was published maliciously and in a defamatory sense with the intent and purpose on the part of the defendants to injure the plaintiffs in their business and profession, and plaintiffs ask judgment for damages in the sum of $50,000.

To the foregoing petition the defendants filed a demurrer based upon the following grounds: (1) The article in question is not defamatory as to the plaintiffs. (2) The article complained against is not libelous *per se* as to the plaintiffs and no special damages are alleged. (3) The article in question does not refer to the plaintiffs in terms and no matters are pleaded sufficient to identify the plaintiffs as the parties referred to. (4) That the article cannot be construed in such fashion as to sustain inferences placed thereon by plaintiffs, and that nothing therein means in law what the plaintiffs claim it means, and cannot be broadened to support plaintiffs' inferences and (5) that the article complained of is not subject to the forced innuendo sought to be placed thereon by plaintiffs, and are neither defamatory nor libelous *per se*; and the same are not actionable in the absence of a claim for special damages. The foregoing demurrer was sustained and the plaintiffs refusing to plead over their

petition was dismissed and judgment entered against them for costs. From such ruling the plaintiffs appeal.

A libel is defined by section 13256 of the 1935 Code as follows:

"A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation, or effigy, tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse; * * *."

And this definition has been held applicable in civil actions for damages. Stewart v. Pierce, 93 Iowa 136, 61 N. W. 388; Shaw Cleaners v. Des Moines Dress Club, 215 Iowa 1130, 245 N. W. 231, 86 A. L. R. 839; Fey v. King, 194 Iowa 835, 190 N. W. 519.

All of the cases cited by the appellants which construe the statutory definition of libel are prior to the opinion by former Justice Evans of this court in the case of Fey v. King, supra. See Mosnat v. Snyder, 105 Iowa 500, 75 N. W. 356; Hughes v. Samuels Bros., 179 Iowa 1077, 159 N. W. 589, L. R. A. 1917F, 1088; Overstreet v. New Nonpareil Co., 184 Iowa 485, 167 N. W. 669; Turner v. Brien, 184 Iowa 320, 167 N. W. 584, 3 A. L. R. 1585.

The Fey case in fact announced a new interpretation of the statute and a new definition for libel. Former Justice Evans in announcing the opinion of this court used the following language (page 838 of 194 Iowa, page 520 of 190 N. W.) :

"The contention for the plaintiff is that the publication charged in the petition was libelous *per se*, and that he was, therefore, entitled to a verdict for damages in some amount. This contention is based upon the assumed legal proposition that any publication concerning a person which tends to provoke him to wrath or expose him to public hatred or ridicule or to deprive him of public confidence and social intercourse is libelous *per se*. If such legal proposition be sound, then plaintiff is entitled to a reversal. But the proposition is essential to plaintiff's success; and if it cannot be sustained, the plaintiff cannot prevail. The action is predicated upon Section 5086 of the Code [now section 13256], which is as follows: [setting it out as above]. This is a definition of criminal libel, for which the offender may be prose-

cuted and punished by the state. It does not purport to supersede civil liability at common law for libel other than criminal, where special damages are shown to have resulted. It is doubtless true that criminal libel, if proven and not justified, must be deemed libelous *per se*. It is not true that section 5086 'makes any printing a libel if it tends to provoke to wrath or to expose to public hatred or ridicule.' It is to be conceded that this is contradictory to some expressions to be found in the discussion of some of our cases, and it will be our purpose here to correct such expression. * * * The membership of the court has not been in harmony of view as to the proper construction of this statute, and this accounts for some of the confusion which has crept into our utterances.''

The opinion then discusses the statute and some of the prior opinions of the court and holds that the publication must be defamatory in order to be actionable, and that mere general abuse and scurrility, however ill-natured, vexatious and untrue, is not actionable, and that although the publication ''tended to provoke the plaintiff to wrath, and to bring him into disrepute and ridicule'' it was not in fact defamatory, and the plaintiff ''was accused only of doing that which he had a right, under the law, to do. Such an accusation could not be deemed an attack upon his integrity or moral character.''

The article in question is long and we deem it unnecessary for the purpose of this appeal to include it verbatim in this opinion. The article itself appears to be a disconnected, inconsistent, and probably inflammatory partisan diatribe containing misstatements and misconstruction of known record facts. For instance, the article says that, ''The desperate hope of the Herring administration to ride out the storm of indignation that now threatens to sweep it into oblivion got another boost Saturday when the appeal of Harold M. Cooper, resigned and discredited liquor commission chairman, was carried over until the September term of the Iowa Supreme Court.'' It continues with the statement that this was done in the face of a statement made by the Governor to the editor of the newspaper that he had ordered the case presented to the supreme court and would not stand for any postponement. Of course, the Governor had nothing to do with the postponement of the case as the record in the supreme court shows. The June period of the court is not, under

the rules, for original submissions except in full bench cases, and such was the reason for the action of the court in postponing the submission of the Cooper appeal. The attorneys had nothing whatever to do with such postponement. And the further statement in the alleged libelous article that, ''The reason given for deferring the hearing another four months was that Linn County Attorney Thompson had advised the attorney general's office that he would be unable to appear on that day. Thompson amplifies that reason by explaining that Cooper's attorneys so far have failed to file briefs on the appeal, notwithstanding the fact that they have had since February to prepare their case. *Their stalling strategy apparently was designed to leave Thompson less than a week to study their briefs and prepare his reply.*'' And with the further statement in the article that the parties so acted ''*to stall off* the Cooper appeal case until fall, and to do everything else possible to prevent a showdown on as vicious a political situation as has ever come to light in this state'', show an utter disregard of the record facts. Thompson, the county attorney did not appear in the appeal and the prompt filing of the abstract and the brief of appellants did not in any way serve to inconvenience him or delay the submission of the appeal, and in fact no ethics were violated by the plaintiffs and no unfair or unprofessional conduct indulged in by them, as far as the records of the court show. While the article complained of may be ill-natured, vexatious, and in the main part untrue as to the conduct of the plaintiffs, yet, it does not charge the plaintiffs, even by inference, with any unlawful or unprofessional act, and we must necessarily conclude that it is not libelous *per se*; and it being conceded that unless it is libelous *per se* it is not actionable at all unless special damages are claimed by the plaintiffs.

We are of the opinion that the article in question did not assail the integrity or professional conduct of the plaintiffs nor charge them, even by innuendo, with a violation of their duty to the public and to the courts. Of course, it is not necessary to constitute a libel that the article name the person libeled, but it must by inference or innuendo at least refer in an intelligent way to the person libeled. No mention is made in the article complained of of the plaintiffs by name and no inference or innuendo seems to connect them with any alleged wrong doing or lack of duty or unprofessional and unethical conduct.

We are constrained to the conclusion that the action of the

trial court in sustaining the demurrer to the plaintiffs' petition was right and it should be and is sustained. An affirmance necessarily follows.—Affirmed.

SAGER, C. J., and MITCHELL, KINTZINGER, HAMILTON, and DONEGAN, JJ., concur.